The German Fairhill Building Association, No. 2, *v.*
Isaac D. Heebner, with notice to Abraham G. Freed,
terre-tenant. Appeal of Gilbert L. Thompson.

*Mechanic's lien—Alterations and repairs—Evidence.*

A mechanic's lien cannot be sustained as for work done on a new build-
ing, where it appears that the work for which the lien is claimed was done
on two adjoining three-story buildings, the old structure having a front of
40 feet and the new of 60 feet, that the old structure was occupied as a
hotel during the whole progress of the work, that the first floor was changed
but the other stories remained substantially intact save for connecting doors,
and that the finished structure continued to be used as a hotel.

No notice having been given, a lien cannot be sustained for work done
and materials furnished for what in fact were alterations and additions.

Argued Dec. 8, 1896.  Appeal, No. 63, Nov. T., 1896, by
Gilbert L. Thompson, from decree of C. P. Montgomery Co.,
March T., 1895, No. 37, execution docket, confirming report
of auditor appointed to distribute a fund in court.  Before
RICE, P. J., WILLARD, WICKHAM, BEAVER, REEDER, ORLADY
and SMITH, JJ.  Affirmed.

Exceptions to auditor's report.  Before SWARTZ, P. J.

It appears from the report of the auditor that Abraham G.
Freed purchased a stone house and lot in the borough of Lans-
dale by deed dated December 13, 1892, in which he kept a hotel
for all purposes excepting the sale of liquor.  He subsequently
filed an application for a hotel license stipulating that, if the
same were granted, the hotel would be enlarged.  Receiving
the license in 1893, he began the work upon improvements
which he had obligated himself to do and erected along the
Main street front of the vacant lot, on the west of the old build-
ing a three-story extension or addition, using the west wall of
the old building for the east end of the new, to the extent of
the depth of the new.  The front walls of the new and the old
were "tied in" at the point of contact.  Part of the old porch
was taken away so that the two buildings could be united.
The porch of the new building was connected with the old so
as to form one continuous line of porch on the Main street front.
In a similar manner the roofs of the two buildings were also

joined together. In the erection of the extension, the same kind of stone was used as in the old building and the same general style of architecture followed, so that, when completed, the old and the new formed one harmonious whole, with three entrances on the Main street front, and a large tower on the extreme western end of the new addition. Communication was made between the old and new buildings by means of one door in the cellar, two doors on the first floor, one on the second and one on the third floor: The main stairway is in the new structure at the dividing line and is alike accessible from the old and new buildings. The new structure is about 60 feet front on Main street, with a depth of about 40 feet. The old building had a front of about 40 feet on Main street and a depth along Broad street, including kitchen, of about 56 feet. The old building was occupied by the owner and his family uninterruptedly for hotel purposes during the building of the addition. The property was purchased subject to a first mortgage of $8,000 and also to a mortgage to the German Fairhill Building Association, No. 2 for $4,000. On August 8, 1893, Mr. Freed executed and delivered to the said German Fairhill Building Association No. 2, another mortgage covering the same premises, for $10,000, recorded August 10, 1893. At which time a bond of indemnity in the sum of $10,000 was given by Freed to the association for the purpose of protecting the association against any possible liens that might be filed against the Tremont House property. On the 26th of March, 1894, Freed executed and delivered to the same association embracing the same premises, a mortgage of $500.

Gilbert L. Thompson on the 4th of September, 1894, filed a mechanic's lien.

The German Fairhill Building Association No. 2, obtained a judgment on its mortgage of $4,000 against Heebner, and on a levari the property was sold at sheriff's sale on February 20, 1895, for the sum of $11,500 subject to the first mortgage of $8,000.

The question arose on the distribution of the fund as to the priority of the mechanic's claim of Gilbert L. Thompson over the mortgage of $10,000 to the building association; in regard to which the auditor, M. D. Evans, found the following conclusions:

The claim of Gilbert L. Thompson was filed September 4, 1894, against all that certain hotel building and lot of land in the borough of Lansdale, Pa., known as the "Tremont House," for work done and material furnished for and towards the erec tion and construction of the northern part of said building. The statement does not aver, neither is it claimed, that notice was given to Abraham G. Freed, or his agent, of the claimant's intention to file a lien for the work done and materials furnished.

A single question arises on the evidence in this case, viz: Was the work done and materials furnished on the said northern part to and for the construction of a new building, or an addition to, or alterations and repairs of an old building? If the former, the claim is good; if the latter, it cannot be allowed.

What constitutes a new building or a rebuilding? The most specific, and now generally accepted rule in the determination of this question is laid down in Miller v. Hershey, 59 Pa. 64:

"The idea which runs throughout all the cases is newness of structure in the main mass of the building, that entire change of external appearance which denotes a different building from that which gave place to it, though into the composition of the new structure some of the old parts may have entered; this newness of structure must be in the exterior, the main plan of the building and not in its interior arrangements. There appears to be good reason for this, not only in the fact that the external walls and all its main parts of a building constitute the strongest marks of its identity, but also in the notice that the external change furnishes to purchasers and lien creditors."

Governed by this rule we must first ascertain, whether there is "newness of structure in the main mass of the building;" whether this "newness of structure is in the exterior, the main plan of the building, and not in the interior arrangements," and whether these external changes in the old building denote a different building from that which gave place to it, though in the composition of the new structure some of the old parts may have entered.

Applying these inquiries to the building under consideration, we find, from the testimony in the case, that they can all be answered in the negative.

There is "no newness of structure in the main mass of the

old building," for with the exception of the cutting of the main and porch roofs, the removal of a portion of the porch, and the breaking through of three or four doorways in the west wall, the original building has not been materially changed. With the exceptions noticed, it stands to-day in itself practically as Isaac D. Heebner built it. During the time of the building of the extension or addition the old building was occupied by Mr. Freed and family, and uninterruptedly used as a hotel. Guests were entertained, liquors sold, and, so far as notice to purchasers or lien creditors by reason of external changes in the building or interruptions to the use of it for hotel purposes was concerned, there was not the slightest indication of a rebuilding or reconstruction of the old house, but simply of the building of an extension or addition to the same. It was strongly urged in the argument of counsel for the claimant, that when the improvements were completed, a distinctive change had been produced in the appearance and character of the building as a whole. That before the improvements it presented the appearance of a handsome private residence, but that after completion it impressed all observers as a large, imposing and inviting hotel or boarding house.

This is true as to the Broad street front; but nevertheless the fact remains, that this effect or change of appearance is the result of an addition or extension, harmonizing with the materials and architecture of the original building, and not caused by any material change in the old building itself. That still remains practically untouched. If the rule laid down in Miller v. Hershey, supra, means anything, it means that there must be an actual, physical change in the old structure, "a change of external appearance which denotes a different building."

Any repairs, however slight, any addition large or small, may change the appearance of a building to which they are made or added, and give it a different character, and yet the building itself, as in the case under consideration, be unaffected in any part of its material structure. If the "external walls of a building constitute the strongest marks of its identity," how can it be said that a "different building has taken its place," when it is conclusively shown, as here, that the external walls, substantially, are intact in all their parts? The mere reflective or consequential effect of an improvement does not determine as to

whether it is a new erection or an addition. To constitute the
first there must appear a substantial, physical change in the
external walls of the building itself. "There appears to be a
good reason for this in the notice that the external change fur-
nishes to purchasers and lien creditors."

What would have been the impression made upon an observer,
standing by and noting from day to day the progress of the work
performed in the improvements in the Tremont House? Seeing,
as he would, a hotel in full operation, guests coming and going,
the family in full possession, undisturbed and uninconvenienced
in the uses of all the rooms in the house, would he naturally
think that a rebuilding of the hotel was going on, or that a mere
addition or extension was being made? While this would be
more of a common sense than a legal test, yet the auditor is
strongly persuaded that so far as notice to purchasers and lien
creditors is concerned it would be the true and proper one, hold-
ing, as he does, that the external changes constituting such
notice should be those changes concurrent with the work, and
not the mere general or consequential effects upon the appear-
ance of the old building as viewed in connection with the com-
pleted new.

All the witnesses examined on this point say that no actual
physical changes were made in the two fronts of the old building.

Comparing this statement with the facts existing in Landis'
Appeal, 10 Pa. 379, it would seem entirely unnecessary to con-
tinue the discussion further. In that case the "old structure
was an old-fashioned two-story house with pent roof formed by
joists of the second story projecting. The roof was propped up,
and the front wall taken out, and rebuilt on a new foundation,
outside and adjoining the old foundations; the old rafters were
spliced, and a new roof put on with dormer windows. All the
partitions in the house, but three, were spliced. The whole of
the inside work, but the floors, was taken out; and the chim-
neys below the garret floor were taken down, new doorways and
windows were cut, and new work put in the old doors. The
back and side walls remained. Adjoining the house a new two-
storied back building was erected without a cellar."

In our case the house was practically untouched; in Landis'
Appeal the building was almost torn down and then rebuilt,
and yet the court held in that case that the work amounted only
to alterations and repairs.

In Smyers v. Beam, Seifert's Appeal, 158 Pa. 57, the facts as stated are as follows : " There was upon the lot a two-storied frame building, 22×60 feet, the lower story being used for a store room, and the upper story divided into small rooms fitted and used as a dwelling house. About three years after the erection of the building the owner built a two-storied addition, 25×80 feet, on the west side of and attached to the old building, took off its roof and the upper story of the west wall, spliced the studding in the south, east and north walls of the old building, so as to raise its upper story on a level with the upper story of the new building, put all under one roof, and fitted out the upper story of the combined building as an opera house, and the lower floor of the new addition as a store room, leaving the remainder substantially as it had been from its first erection."

Held that this was "additions, alterations and repairs," and not original construction.

In De Wald v. Woog, Murphy's Appeal, 158 Pa. 497, the premises were " two four-story buildings, each having a front of 20 feet extending back about 50 feet. They were divided on the first story by a 13-inch wall, and above that by a hallway and plaster partition. The front wall was iron and glass for the first story, with iron columns supporting the brick wall above. The rear wall was brick, and the side walls were party walls. Between the two buildings was a stairway running from ground to top story. The first floor was occupied as two store rooms with a door into each from the street."

Under the contract all the interior of the building was taken out, new materials put in, and arranged on a different plan. The two buildings were thrown into one. All the old materials in front wall of first story, except iron columns, were taken out. New doors and windows were put in, and the arrangements of first story changed. Above the first story the front wall was not changed. New windows with large glass were put in. In the rear wall the first and second stories were taken down, iron columns put in and the building was extended back ten feet, two stories high. During the remodeling, and prior thereto, Woog occupied the premises with a restaurant and bar. Held to be " additions, alterations and repairs."

So far as the " character and extent" of the changes made,

are concerned, the case under consideration bears no comparison to the three cases just cited. In the former the building was practically untouched; in the latter, the style, walls, extent and general appearance of the structures were almost completely changed, and yet amounted only to "additions, repairs and alterations."

Under the law and the facts the auditor is compelled to disallow the claim of Gilbert L. Thompson.

\*    \*    \*    \*    \*    \*    \*    \*    \*

The amount for distribution, viz.: $1,580.27, after payment of expenses of audit, etc., is awarded to the Fairhill Building Association, No. 2, or its attorneys, Hon. Chas. H. Stinson and Francis Roepke, Esq., on account of its mortgage of $10,000 dated August 8, 1893, and recorded in Mortgage Book No. 256, page 452.


Exceptions being filed to the report of the auditor they were dismissed in the following opinion by SWARTZ, P. J.

The auditor distributed the entire fund in court, less costs, to the German Fairhill Building Association on account of its mortgage of $10,000.

Exceptions were filed by this building association because the expenses of audit were charged against the fund for distribution.

Gilbert L. Thompson and Harry Richardson each excepted to the report, because their claims on mechanics' liens were rejected.

Mr. Richardson, upon the argument, withdrew his exceptions, at the same time counsel for the building association agreed not to press his exceptions so far as they affected Mr. Richardson. He contends, however, that one-half of the expenses of audit should be paid by the other exceptant, Mr. Thompson.

The auditor finds that the work and materials were furnished for an addition, alterations and repairs to an old building. This finding defeats the lien of Mr. Thompson. His claim was not filed for additions and alterations, and no notice was given of his intention to file a lien as required by the act of May 13, 1887.

We can add nothing to the able report of the auditor. His findings of facts are fully sustained by the evidence, and his conclusions of law are clearly upheld by the authorities cited.

To our mind Seifert's Appeal, 158 Pa. 57, and Murphy's Appeal, 158 Pa. 497, rule the case conclusively.

The expenses of audit were charged against the fund for distribution. No reasons were assigned for this action; perhaps it was unnecessary to offer any.

It does not appear that any witness fees were claimed or allowed Mr. Thompson.

In a distribution of the proceeds of a sheriff's sale by an auditor costs do not necessarily fall upon the unsuccessful claimant. Where he shows probable cause for litigation the costs are usually placed upon the fund. Larimer's Appeal, 22 Pa. 41; Sansenbacher v. Schickendantz, 141 Pa. 423.

Where the subject-matter in dispute is a mixed question of law and fact raising such a contention, started and conducted in good faith, as reasonably calls for the opinion and judgment of a court, the fund and not the losing party should bear the costs: Cameron v. Crossman, 4 C. C. R. 316.

The contest before the auditor raised questions of law as well as of fact. It is not always an easy matter to determine whether a construction constitutes a new building or an addition and alteration. If the number of cases before the Supreme Court, in which this question was involved, is any indication, then the difficulty suggested is a serious one.

Again, the money was paid into court by the the sheriff, on motion of the plaintiff in this suit, and not upon the application of Mr. Thompson. In this application of the plaintiff there is an admission that this is a proper case for adjudication by the court. The application reads as follows : " On motion of the plaintiff by C. Henry Stinson, Esq., its attorney, the court grant a rule on A. D. Simpson, sheriff of said county, to pay into court the money made under the above stated writ, now in his hands, as there is a question arising to whom the money should be paid as between lien creditors." This rule was submitted to the court, and is in the words of the counsel for plaintiff as evidenced by the writing on file.

Where the costs are placed on the losing party we find that it is upon his application that an auditor is raised and he fails in his attack upon a claim, because there was no reasonable ground for the contest.

And now, December 2, 1895, all the exceptions to the auditor's report are dismissed, and the report is confirmed.

*Errors assigned* were (1, 2) in dismissing the exceptions to the auditor's report in that it awarded the balance for distribution to the German Fairhill Building Association, No. 2, and disallowed the claim of Gilbert L. Thompson, the exceptant; (3) in dismissing exception to the auditor's report in refusing to award to exceptant's mechanic's lien priority of the mechanic's lien in distribution over plaintiff's mortgage on which the levari facias was founded; (4) in dismissing the fourth exception by Gilbert L. Thompson · to the auditor's report, as follows : To the auditor's finding of fact that the work done and materials furnished by exceptant for which he filed his lien, were furnished for an addition to or alterations and repairs of an old building, and not to and for the construction of a new building; (5) In confirming auditor's report.

*Irvin P. Knipe* of *Wanger & Knipe*, for appellant.—The findings of fact in this case clearly distinguish it from Seifert's App., 158 Pa. 57; Murphy's App., 158 Pa. 497.

The appellee, having stamped the building as the erection and construction of a large hotel, and carefully and properly having secured indemnity against loss, by reason of the possible filing of liens by mechanics, should be now estopped from setting up any different view of the matter; and the sureties on the bond of indemnity having given like description of the erection, the same principle is applicable to them, and there is accordingly no equity for the allowance to its claim on account of the rights of others, it having no just right to relief from this fund.

*Francis L. Roepke* and *Charles H. Stinson*, for appellee.

OPINION BY WICKHAM, J., February 16, 1897 :

A careful examination of the facts furnished us by the auditor's report in this case, the evidence not being printed, satisfies us that the court below committed no error.

While the original building described in the report of the learned auditor, and represented, we suppose, with reasonable fidelity, in the pictures offered in evidence, was changed, still the changes were merely alterations and additions within the meaning of the Act of May 18, 1887, P. L. 118. This act requires notice of the intention to file a lien to be given the owner or reputed owner, or his agent, at the time of doing work or furnishing materials in and about repairs, alterations, or additions to a building. It is conceded that no notice was given.

The original building, situate in the borough of Lansdale, was two stories high, with an attic equivalent to a third story. Each of the three floors was divided into five apartments, those on the second and third floors being bed rooms. It had a front of about forty feet on Main street, and, including the kitchen, extended back along Broad street about fifty-six feet. The owner used it as a hotel, and desiring to enlarge it, built a three-story addition thereto on the west side, the new part fronting about sixty feet on Main street, and running back therefrom about forty feet. The walls of the addition were of stone to correspond with those of the old building, the porches were connected so as to form one continuous porch along Main street, and the roofs of the two buildings properly united. Communication between the new and old parts of the compound structure was had through a door in the cellar, two doors on the first floor, one on the second, and one on the third, all cut through the west wall of the old building. The only interior changes made in the latter were on the first floor, and consisted of the removal of folding doors between two rooms and a slight modification of one of the stairways. The exterior walls along Main and Broad streets, and the doors, windows, porches, cornices, etc., therein and thereon were not changed in any way. The cost of the improvements is not given by the learned auditor, except so far as it may be inferred from his finding that "They were of no mere ordinary character, but in extent were almost if not quite as great as the original building itself." It may be assumed, therefore, that the new and the old parts of the building were about equal in value. During the whole time that the addition was being built, the owner occupied and used the original structure as a licensed hotel, entertaining his guests and customers as before.

The above facts, found by the learned auditor and not excepted to, fully vindicate his conclusion, that the materials furnished by the appellant were for alterations and additions to an existing building, and that not having given the notice required by law, the appellant was not entitled to a lien.

In Seifert's Appeal, 158 Pa. 57, a case in its main facts not unlike the present one, the owner of a two-story frame building, having a width of twenty-two and a depth of sixty feet, the lower part used as a store, and the upper as a dwelling, built

thereto, along the west side, an addition twenty-five by eighty feet, took out all the partitions in the second story of the old building, removed the roof, and the west wall of the upper story, spliced the studding in the southeast and north walls so as to raise this story to the level of the corresponding story of the addition, put both parts under one roof, and fitted out the whole upper story as an opera house, and the lower part as a store room. It was held that these changes, although more extensive and far reaching in their character and results than those shown in the case in hand, did not create a substantially new building. See also Landis' Appeal, 10 Pa. 379; Murphy's Appeal, 158 Pa. 497.

That the union of the new and old buildings has resulted as the learned auditor says in " one harmonious whole " stamped " with a new and distinctive character " is not enough to make the structure a new building in the eye of the law. As the learned auditor adds, by way of explanation, " nevertheless the fact remains, that this effect or change of appearance is the result of an addition or extension harmonizing with the materials and architecture of the original building, and not caused by any material change in the old building itself. That still remains practically untouched."

A modern architect, by adding to an old building two or three porches, a gable or two, two or three dormer windows, changing the chimney tops, and repainting the whole, can at a comparatively small cost so change the appearance of the original structure, that its owner, if absent during the progress of the improvements, might not recognize it on his return, save by the surroundings; still these things would after all be merely alterations, additions, and repairs.

Cases may occur where the extent, character, and value of the additions are, comparatively speaking, so costly and great as to make the original building only worth considering as an element of the new. Whenever this happens, the courts will not hesitate to apply the rule compressed in the maxim, " De minimis lex non curat." The present case is not of that character.

It is not necessary to add anything farther to what is contained in the report of the learned auditor and the opinion of the learned judge of the court below.

Decree affirmed and appellant directed to pay the costs of the appeal.