Mehl & Sapper *v.* William Fisher and George Berriman, Owners or Reputed Owners, and William A. Jenkins and ·C. A. Conrader, doing business as Jenkins & Conrader, Contractors, Appellants.

*Mechanic's lien—Province of court—New building or addition.*

The evidence being undisputed it is the province of the court to determine whether a structure is a new building and as such subject to lien under the act of 1836, or a mere addition to an old one so that notice would be required under the Act of May 18, 1887, P. L. 118.

*New building or addition distinguished.*

When an addition to an old building is a mere appendage of the original structure and subordinate to it, the two being intended to be used for some common purpose, the act of 1887 applies, and notice of the intention to file a lien must be given in accordance with its provisions. If the structure, however, is designed as an independent building and is capable in its entirety of being used as such without injury to the old property or the new, and the main mass of the new building as designed is only capable of independent use, then the new structure is not an addition to the old, and notice in accordance with the act of 1887 is not necessary.

*Temporary connection of rooms—Individual contractors.*

The fact that two storerooms are connected by the removal of an intervening wall for the accommodation of a tenant, who may remove at any time does not make the buildings to which they belong one building, they being otherwise adapted for use as separate and independent structures.

Argued May 15, 1899. Appeal, No. 16, April T., 1899, by defendants, from judgment of C. P. Erie Co., Sept. T., 1896, No. 37, on verdict for plaintiffs. Before RICE, P. J., BEAVER, ORLADY, W. W. PORTER, W. D. PORTER and ·BEEBER, JJ. Affirmed. Opinion by W. D. PORTER, J.

Sci. fa. sur mechanic's lien. Before NOYES, P. J., of the 37th judicial district, specially presiding.

The facts sufficiently appear in the opinion of the court.

Defendants submitted among others the following point :

[It appearing from the undisputed evidence in the case that the contract and specifications under and in pursuance of which the building in question was constructed, and that the building as constructed was an alteration of an old building, and an ad-

dition to said old building, and there having been no notice given by the plaintiffs of their intention to file a lien for the materials furnished as required by law, the verdict must be for the defendants.   *Answer :* I answer the second point on the part of the defendants in the negative.] [2]

The court charged the jury in part as follows:
[The substance of these instructions will be that as far as the building is concerned it was of such a character that the lien could be filed, without giving notice.] [1]

Verdict and judgment for plaintiffs for $504.12.  Defendants appealed.

*Errors assigned* were (1) to portion of the judge's charge, reciting same.   (2) In not affirming defendants' second point, reciting point and answer.

*George A. Allen*, with him *L. Rosenzweig*, for appellants.— The analysis made by Mr. Justice GREEN in the case of Thomas v. Hinkle, 126 Pa. 478, fully sustains the appellants' contention here and will sustain the rulings in the case of Best v. Baumgardner, 122 Pa. 17, and Groezinger v. Ostheim, 135 Pa. 604, all of which are directly applicable to the case at bar.  All the rulings in these cases are followed in the recent case of Warren v. Freeman, 187 Pa. 455.

*Henry E. Fish*, with him *John S. Rilling*, for appellees.— Under this evidence, which is undisputed, taken in connection with all the rest, it was the plain duty of the court to say that the building against which the lien is filed was an erection within the meaning of the act of 1836, entitling plaintiffs to the lien: Harman v. Cummings, 43 Pa. 322; Girard Co. v. Southwark, 105 Pa. 248.

The evidence shows the new building to be so independent of the old in its design and construction that we do not think the question suggested by the appellants that it would come within the provisions of the act of 1887 as an addition, fairly arises from the facts, even if a structure which would support a lien under the act of 1836 could be made subject in any way to the conditions or qualifications of the act of 1887.  How-

ever, discussing the question upon the basis of the appellants' contention, we find that the Supreme Court in its last distinct utterance upon the subject in the case of Wheeler v. Pierce, Kelly & Co., 167 Pa. 416, has decided that the act of 1887 does not apply to any structures against which liens could have been maintained under the act of 1836, in language so clear and emphatic as to leave the question no longer open for discussion in the courts of this commonwealth.

The earlier cases of Thomas v. Hinkle, 126 Pa. 478, Best. v. Baumgardner, 122 Pa. 17, and Groezinger v. Ostheim, 135 Pa. 604, cited and relied upon by appellants, are not, as will be seen upon examination, in conflict with the position of the appellees here.

The same principle of construction applies to the cases of Best v. Baumgardner and Groezinger v. Ostheim. Both arose in Lancaster county, to which the special act of May 1, 1861, originally applicable only to Chester, Delaware and Berks, had been extended, and being thus special it was the law within Lancaster county under the said rule of construction, as to all buildings which came within it, notwithstanding said buildings might also have been subject to lien under the general act of 1836.

OPINION BY W. D. PORTER, J., April 23, 1900:

This is a proceeding upon a mechanic's lien, and the various specifications of error raise but one question. The learned court below instructed the jury that under the evidence, the building against which the lien was filed was of such a character that it would support the lien under the act of June 16, 1836, P. L. 695, without giving the notice required by the Act of May 18, 1887, P. L. 118, which instruction is assigned for error.

There was no attempt to embrace within the operation of this lien any part of an old building upon the theory that it had been so changed throughout as to make it a new building. The lien is filed against a structure which is absolutely new, and did not take the place of an old building which stood upon the same ground or upon any part of the same ground. The cases of Smyers v. Beam, 158 Pa. 57, Thompson's Appeal, 3 Pa. Superior Ct. 643, and Warren v. Freeman, 187 Pa. 455, have no application in controversies of this character. The evidence

was undisputed, and it was for the court to determine whether the structure was a new building or a mere addition to an old one.

In 1893, William Fischer and George Berriman, the defendants, became the owners of a lot of ground in the city of Erie, fronting twenty-six feet on State street and extending westerly 160 feet to an alley. In the same year they erected a three-story brick building on said lot, covering the entire frontage of twenty-six feet on State street and extending westerly seventy feet. The first story was finished and rented as a storeroom; the upper stories were finished and used as flats. In 1895, Thirteenth street was opened and improved by the city authorities from State street westerly along the northern line of the lot in question, and passing on through to Peach street, leaving a frontage of said lot of ninety feet upon the south side of Thirteenth street from the rear of the old brick building back to the alley. Shortly after the improvement of Thirteenth street the defendant owners entered into contracts for and caused to be erected the building now in question. The new structure was built of brick, was three stories high and covered the entire lot from the alley to the rear wall of the old building which fronted on State street; the rear wall of the old building was used as a party wall between the two buildings, all the windows in said wall having been solidly built up with brick; but the new building was in no way dependent upon this wall for support. The outer walls of the new building were not interlocked with those of the old building, the device of construction adopted being a slip joint, so as to permit of the new building settling without disturbing the old. The two upper floors of the new building were designed and finished to be used as flats, entirely separate and distinct from the system of flats in the State street building, there being no door or other means of communication between the two buildings on either the second or third floor. The entrance to the new flats was by a stairway leading up from Thirteenth street. The entrance to the old flats was by a stairway leading up from State street. The first floor of the old building contained no windows or other openings on the Thirteenth street side; the first floor of the new building was divided into three rooms, independent of each other, which were intended and finished for storerooms;

two of them were rented as such at the time of the trial to separate tenants. Each of these rooms had a store front opening out on Thirteenth street. Each storeroom had its own independent cellar. Before the building was completed, possibly before it was contracted for, the tenant occupying the State street storeroom in the old building arranged to rent the easterly storeroom in the new building, to be used by him in connection with his business in the State street storeroom, and as soon as the construction of the new building had been far enough completed to permit of making the opening, the rear wall between the State street storeroom and the easterly storeroom of the new block was removed, the wall between the upper floors being supported by an iron girder.

It thus appears that so far as the external appearance went this structure consisted of a row of new stores fronting on Thirteenth street, each being independent of the other, and above was the system of flats with its stairway leading up from Thirteenth street. So far as the internal arrangements were concerned, the upper floors were absolutely independent of, separate and distinct from, the building fronting on State street. The fact that they had a party wall in common is of no consequence, as that is the rule, rather than the exception, in the business portion of cities, even where adjoining buildings are the property of different owners. On the first floor the west storeroom, next the alley, and the middle one were independent of each other and absolutely distinct from the State street building. They could reach it, it is true, by going out of their front doors onto Thirteenth street and walking along Thirteenth to State street, and then passing into the State street building. In short, between these storerooms and the State street building there was no more connection than exists between the different warehouses in the same square in the business portion of any city. The only parts of the two buildings used in common were the storeroom in the State street building and the easterly storeroom in the new row. Can it be said that because the same tenant occupies parts of each of the buildings that therefore they are one building? It is true that the wall between the rooms has been removed, but that could be restored at any time and the respective storerooms left in exactly the condition in which they were before.

It is conceded by the defendants that the change in the rooms was made for the accommodation of the present tenant, and William Fischer, one of the defendants, testifies as follows: " Q. Now, if you built that new part simply as an addition for the accommodation of Mr. Koster, why did you build a big brick block that he only occupies one part of, with two stores back of it? A. It was to my interest to build more. Q. It was to your interest to improve that property and put up a new building that you could get income from? A. Yes." It is manifest that this easterly storeroom, with its entrance from Thirteenth street, was constructed in that manner so as to be capable of independent use and that the connection with the State street store is to be considered merely as temporary. In determining whether this is a new building or an addition to an old one, we must consider the general plan of the new structure and the main mass of the building, in order to determine its character. The mere use to which one room may be devoted at the present time cannot determine the question. There is a difference between an addition to a row of buildings, or the addition of a row of buildings, and the erection of a mere appendage to an existing building. If A, being the owner of five adjoining but distinct warehouses, builds on adjoining land five more adjoining but distinct warehouses, that is an addition to the row, but it is not an addition to any building in the sense of the act of assembly.

When an addition to an old building is a mere appendage of the original structure and subordinate to it, the two being intended to be used for some common purpose, the act of 1887 applies and notice of the intention to file a lien must be given in accordance with its provisions: Best v. Baumgardner, 122 Pa. 17; Groezinger v. Ostheim, 135 Pa. 604. The new building must, however, be subservient to and dominated by the purposes to which the old continues to be devoted. If the main mass of the new structure is only capable of an independent use, the question of whether it is a new building or an addition to an old one must turn upon what was called in Norris's Appeal, 30 Pa. 122, and Pennock v. Hoover, 5 Rawle, 291, 307, " the design of its character." If the building is designed as an independent building and is capable in its entirety of being used as such, without injury to the old property or the new,

and the main mass of the new building as designed is only capable of independent use, then the new structure is not an addition to the old, and notice in accordance with the provisions of the act of 1887 is not necessary. In determining how a lien must be filed we must consider the property as a whole. The small storeroom in the new building, which is now used in connection with the storeroom in the old building, cannot be separated, for the purposes of lien, from the other two storerooms fronting upon Thirteenth street, for that would destroy the system of flats on the floors above. We must consider the property as a whole: Lauman's Appeal, 8 Pa. 473. When in a building operation alterations are made in the old building and at the same time a new erection added, the whole being incorporated into a common design so that the main mass of the building is only capable of use in common, the act of 1887 applies to the entire operation: Smyers v. Beam, supra; Warren v. Freeman, 187 Pa. 455.

In this case there was no change made in the old building. Its storeroom fronting on State street can be used as it was before. The only thing which was done was the removal of a short wall between it and the adjoining storeroom used in connection with the buildings to which they belong, without injury to either. The present use of them as connecting storerooms is to subserve the convenience of the tenant, who may remove at any time. The use by mercantile establishments of two storerooms in buildings, the property of different owners, and the removal of partition walls to subserve that use, is by no means uncommon in cities, but such use of the storerooms in common does not make the buildings to which they belong one building. We are clearly of opinion that the learned court below was right in holding that the row of stores on Thirteenth street, with the system of flats above them, was not such an addition to the building at the corner of State street as to require notice to be given in accordance with the provisions of the act of 1887.

Judgment affirmed.