LETITIA GORDON *vs.* EDWARD P. TORREY and others.

In a dispute between a mortgagee and lien claimants, as to the priority of their respective encumbrances on the mortgaged premises, where it was objected to the validity of the lien that the building was not erected by the owner of the land, nor by his consent expressed in writing, and it appeared that, pending the erection of the building, the owner had conveyed away the land, but that the conveyance was merely as collateral security for the payment of a debt due to the grantee, that the deed was intended simply as a mortgage, and that on satisfaction of the debt the land was reconveyed—*held,* that these circumstances effectually dispose of the objection urged against the validity of the lien.

A change of ownership during the progress of the building does not make a new commencement of the building, nor affect the validity of the lien which attached at the commencement of the building.

Nor will the interruption of the work for a short period, and its subsequent resumption without a change of its original design and character, constitute a new commencement, or affect the attachment of the lien when the building was originally commenced.

The proceeding under the statute to enforce the lien by said deed judgment is a proceeding *in rem.* It does not create the lien any more than a proceeding and decree for the foreclosure of a mortgage. There is nothing in the statute which requires that the time of the commencement of the building, and the consequent attaching of the lien, should be specified either in the lien itself or in the record of the judgment.

It is no objection to the validity of the liens that the mortgagor procured them to be filed, or that he concealed their existence from the mortgagee at the time of obtaining the loan for which the mortgage was given. If the mortgagor was actuated by fraudulent motives, it cannot affect the

rights of the lienholders. The validity of the liens cannot depend upon the motives which suggested their being filed.

---

*I. W. Scudder*, for complainant.

*Slaight*, for lienholders.

The Chancellor. The bill is filed to foreclose a mortgage given to the complainant, by Edward P. Torrey, upon a house and lot in Jersey City. The only question in dispute between the parties is, whether the complainant's mortgage is a prior encumbrance to the liens of the mechanics and materialmen for work done and materials furnished in the erection of the house upon the premises. The complainant's mortgage is dated on the eleventh, and recorded on the thirteenth of April, 1861. The liens were filed between the twenty-seventh of July, and the twenty-seventh of August, inclusive, in the same year. The building was commenced, according to the testimony of Torrey, the owner and builder, in the fall of 1859. The foundation was then built. The building was resumed in the following spring about May, and completed, he thinks, in May, 1861. So far as can be ascertained from the liens filed, the work and materials which form the subject of the lien were done and furnished between September, 1860, and May, 1861.

1. It is objected to the validity of the lien that the building was not erected by the owner of the land, nor by his consent expressed in writing. The legal title was in Torrey, the builder, from the nineteenth of September, 1859, until the eleventh of August, 1860, when he conveyed it to Thomas B. Oakley. On the tenth of April, 1861, it was reconveyed by Oakley to Torrey. Torrey testifies, and the fact does not seem to be at all questioned, that he conveyed the land to Oakley merely as collateral security for the payment of a debt due from him to Oakley; that the deed was intended simply as a mortgage, and that upon the satisfaction of the debt the land was reconveyed. This effectually disposes of

K*

the objection. But admitting the title to have been absolute in Oakley, it is not perceived that the rights of the lien-holders are affected. The building was commenced by Torrey while the title was in him. The foundation was then built. The liens attached at the commencement of the building upon the estate of Torrey, and the title passed to Oakley, and was reconveyed to Torrey subject to the encumbrance of the liens. A change of ownership during the progress of the building does not make a new commencement of the building nor affect the validity of the encumbrance. *Hern* v. *Hopkins,* 13 *Serg. & R.* 269; *Pennock* v. *Hoover,* 5 *Rawle* 207; *Edwards* v. *Derrickson,* 4 *Dutcher* 39.

Nor will the interruption of the work for a short period, and its subsequent resumption without a change of its original design and character, constitute a new commencement, or affect the attaching of the lien when the building was originally commenced. *American Fire Insurance Co.* v. *Pringle,* 2 *Serg. & R.* 138; *Hern* v. *Hopkins,* 13 *Serg. & R.* 269.

After the conveyance to Oakley, the building was continued under Torrey's directions and for his benefit. Oakley never interfered with his operations nor questioned his right, nor is he now in court setting up title in himself or questioning the right of Torrey or the validity of the liens.

2. It is objected that the time when the building was commenced is not specified, either in the lien filed or in the record of the judgment, and that the encumbrance therefore cannot attach until the actual entry of the judgment. The statute, in express terms, makes the debt a lien from the commencement of the building. *Nix. Dig.* 526, § 11. The proceeding to enforce the lien is a proceeding *in rem.* It does not create the lien any more than a proceeding and decree for the foreclosure of a mortgage creates the encumbrance. There is nothing in the statute which requires that the time of the commencement of the building, and the consequent attaching of the lien should be specified, either in the lien itself or in the record of the judgment. It would seem that any such entry either in the lien or in the judgment, except

where the fact was in some way put in issue, and found by the jury, would be unauthorized and unavailing as evidence of the fact. It is certainly a matter of regret that so material a circumstance, affecting the title to real estate as the inception of the encumbrance, should be left to depend upon the parol testimony of witnesses often deeply interested in regard to facts of equivocal character, which may constitute the commencement of a building. But so is the statute, and the court cannot add to its requirements. It may be true, as insisted by the complainant's counsel, that in the absence of parol evidence of the time of the commencement of the building the record of the judgment can furnish no evidence of the lien prior to the date of the work done, or materials furnished as specified, or to the actual entry of the judgment. But that question does not arise in the present case. The fact is unquestioned, that the building was nearly completed when the complainant's mortgage was given.

There is nothing in the case to justify a doubt in regard to the *bona fides* of the claims of the lienholders. The evidence shows that the work was done and the materials furnished as charged by the claimants, and that the debts have not been paid. This is proved, both by the evidence of the lienholders themselves and of Torrey, the owner and builder. There is nothing tending to discredit their testimony.

If it be admitted that Torrey acted in violation of good faith in concealing or in failing to disclose the existence of the liens at the time he procured the loan from the complainant for which the mortgage was given, it cannot affect the legal or equitable rights of the lienholders. Nor are those rights at all impaired, if it be admitted that the liens were filed at the instance of Torrey. He may, in perfect consistency with good faith and fair dealing, have desired that the just claims of the mechanics and materialmen should be secured upon the building, in preference to the Oakley mortgage, which he then believed, and subsequently proved to be fraudulent. But if Torrey was actuated by fraudulent motives it could not affect the rights of the lienholders. The validity

of the liens cannot depend upon the motives which suggested their being filed.

There is nothing in the evidence to affect the validity of the liens, or their priority to the complainant's mortgage.

It will be decreed accordingly.