SCHROETER BROTHERS HARDWARE COMPANY, a Corporation, v. CROATIAN "SOKOL" GYMNASTIC ASSOCIATION, a Corporation, Appellant, and GEORGE MOELLER.—58 S. W. (2d) 995.

Division One, March 16, 1933.

*Conrad Paeben* and *Jeffries, Simpson & Plummer* for appellant.

*Geo. Eigel* and *W. S. Campbell* for respondent.

*Gustave A. Stamm* and *Maurice L. Stewart* for Edward W. Tobin, Trustee in Bankruptcy.

HYDE, C.—This is an equitable action, brought under authority of Section 3180, Revised Statutes 1929, to determine the rights of mechanic's lien claimants in certain land and improvements in the city of St. Louis. In 1925, appellant owned a tract of land, fronting 125 feet on the north side of Chouteau Avenue and running back 150 feet to an alley. There was a brick building and also a residence, on this property, which were used by appellant in its various activities. Appellant formerly was a voluntary association, but, in that year, it incorporated under the statute providing for benevolent, educational and charitable corporations. This was done pursuant to a plan to erect a new and larger building for its members. Out of the construction of this new building, arose the mechanic's liens involved here.

The evidence, although rather indefinite as to dates, seems to show that the history of the new building was substantially, as follows: In the fall of 1925 the wrecking of the old buildings was commenced. This work was done under a contract for the wrecking only. A separate contract was entered into about the same time with another firm for excavating the front part of the lot. The wrecking and excavating was done in two sections: ''First wrecked the front part and excavated it and then they was waiting until the ground in front was cleared up to wreck the rear end of it.'' A separate contract was also made with another contractor to lay the foundations for the new building. He did this work about January, 1926. During the progress of the wrecking of the rear portion of the old building, it was determined that about one-half of the east wall and

about two-thirds of the north wall of the old building was sound and could be used as part of the foundation and wall of the new building. These walls were accordingly left standing. In the early part of 1926, contractors were asked to bid upon the construction of the remainder of the building, in accordance with plans and specifications which had been drawn by appellant's architect. The bricks salvaged from the old buildings were to be used for the walls of the new building. Respondent Moeller was the successful bidder and appellant entered into contract with him, dated March 22, 1926, to complete the building for $74,000. Moeller began work early in April, on the front part of the building, where there were to be stores, by putting in pier and column footings. He related the further progress of the work thus:

"Started the brickwork, cut-stone work, put down the cut-stone base; then we set up the iron columns; then we started with the brickwork and got down with the brickwork in front of the building first, and then later on, after they had the rear portion removed, started working on the rear portion of the building until we were on the roof, and then we started working on the inside. Before we got on the roof, we laid all the floor joists, little subfloors all over the building; we put on the ceiling joists and roof joists, putting on sheeting—the roof for the whole building, and the skylights."

In June, 1926, however, about the time the front footings were completed and the brickwork started, appellant's officers decided to change the east part of the building from a swimming pool to a picture show. To carry out this change they had additional plans and specifications drawn and entered into a contract with Moeller to carry them out for $16,800. As the building progressed appellant's officers desired further changes. On September 13, 1926, Moeller submitted a written proposal to make changes in the boiler room and gymnasium, in accordance with revised drawings, for a charge of $1,085. This proposal was accepted. On October 2, 1926, Moeller submitted a written proposal to furnish new face brick, for the front wall and part of the side walls, for $1,286. This was accepted. During November and December Moeller made other proposals for extra construction, including a retaining wall, flag pole, skylight and other things desired by appellant, but not included in the original plans, aggregating $2,253, which were likewise accepted. On January 25, 1927, Moeller made a written proposal for building a stage and dressing rooms, for $2,480, which appellant accepted. Appellant also accepted a further proposal for a platform in the show building, for $108. On March 3, 1927, Moeller made a proposal to build a club room and a garage, in a part of the space originally planned for the gymnasium, for $5,714, which appellant accepted. On March 18, 1927, Moeller made a further written pro-

posal for additional partitions for $1,070. Appellant also accepted this proposal. The acceptance of all of these proposals was made, on behalf of appellant, by its president, Mr. Budrovitch, who had charge of the building operations. In addition to this additional construction which was proposed and accepted in writing, Moeller claimed appellant owed him for a number of other smaller items aggregating $2,669.58. These included cement and sand, which he furnished to appellant's sidewalk contractor, to build the sidewalk in front of the building, extra excavating and hauling, putting in picture molding where the specifications did not call for it, sanding and oiling floors, putting in ventilators and other extra plumbing, and a number of other such items for work and material. Moeller also testified that he verbally agreed with Budrovitch to change the partitions in the building from well burned hard title to gypsum tile and also by such verbal agreements made other minor changes in the original specifications.

Respondent Schroeter Brothers Hardware Company made a proposal, which appellant accepted December 17, 1926, to furnish all the hardware for the building, required by the specifications, for $900. This Company claimed also to have furnished additional hardware of the total value of $71.05. While there was evidence to show what these items were, there was no evidence as to the price or value of them, the only thing shown being that a total charge of $71.05 was made for all of them. This Company went into bankruptcy, after filing a lien claim, and the trustee in bankruptcy has been substituted as plaintiff. We will, however, for convenience, refer to plaintiff as Schroeter Brothers.

The financing arranged by appellant seems to have been about sufficient for the original contract made with Moeller, but it could not stand the strain of the changes and extras. At the time the wrecking commenced, appellant owed a $12,000 mortgage on the old building. Donations from its members and kindred organizations evidently were sufficient to pay for most of the preliminary work. To finance the remainder of the work, appellant executed a deed of trust on February 20, 1926, to the Title Guaranty Company of St. Louis, as trustee, for the holders of the notes described. This trust deed secured notes in denominations of $100, $500 and $1,000, aggregating $100,000. Appellant attempted to sell these notes to its members, but was only able to dispose of about $12,000 of them. Most of this was used to pay off the old mortgage. It was arranged about two or three months after Moeller went on the job to obtain a loan of $75,000 by putting up the remaining $88,000 of notes as collateral security. Moeller thereafter got his pay by making an estimate of his work each month to Budrovitch, who took it to the

parties who made this loan. They gave Moeller a check based on this estimate.

On June 22, 1926, one Milo Duchon conveyed to appellant a strip of land seven and one-half feet wide and ninety-five feet long adjoining the picture show part of the building. On the same date, appellant executed a deed of trust securing notes, for part purchase money in the aggregate sum of $2,400, to Walter W. Rumer, trustee for Milo Duchon. The foundation was all in prior to this purchase. There was no evidence to show who were the holders of the notes secured by either of the deeds of trust (except that appellant's members bought some of them).

Schroeter Brothers' petition made parties defendant, in addition to appellant, Title Guaranty Trust Company, a corporation; Walter W. Rumer, Milo Duchon, George Moeller, and the unknown owner or owners of certain promissory notes described in and secured by a deed of trust executed by Croatian "Sokol" Gymnastic Association, dated the 20th day of February, 1926, and recorded the 23rd day of February, 1926, in book 4364, at page 474, of the records of the office of the Recorder of Deeds of the City of St. Louis, Missouri, said unknown owner or owners of said notes being the unknown consort or consorts, heirs, devisees, donees, alienees, immediate, mesne or remote, voluntary or involuntary grantee of said Title Guaranty Trust Company, a corporation, and of the holder or holders of the notes therein described and thereby secured, and their heirs, assigns, legal representatives, executors or administrators; and the unknown owner or owners of certain promissory notes described in and secured by a deed of trust executed by Croatian "Sokol" Gymnastic Association, a corporation, dated the 22nd day of June, 1926, and recorded the 23rd day of June, 1926, in book 4493, page 52, of the records of the office of the Recorder of Deeds of the City of St. Louis, Missouri, said unknown owner or owners of said notes being the unknown consort or consorts, heirs, devisees, donees, alienees, immediate, mesne or remote, voluntary or involuntary grantees of Walter W. Rumer and Milo Duchon.

The petition alleged belief:

"That all or part of the negotiable promissory notes described in and secured by the two deeds of trust hereinbefore specified, were by those beneficiaries therein named, or by subsequent owners of the said notes and deeds of trust, afterwards, for value, sold, endorsed and transferred to and negotiated to, and are now held and owned by a party or parties unknown to this plaintiff; that said unknown party or parties, by reason of being the owner or owners of said notes and of said deeds of trust, have an interest in the aforesaid real estate, and in the aforesaid building, appurtenances and improvements and is or are interested in the subject matter of this

petition and in this suit, and that the interest of such unknown owner or owners of said notes and deeds of trust, and in the subject matter of this petition and suit, is and are derived as hereinbefore specified, so far as the knowledge of this plaintiff extends, said unknown party or parties claiming by or through said negotiable promissory notes hereinbefore particularly described and the two deeds of trust securing them.''

The petition asked judgment for $971.05 and a mechanic's lien against the land and building as a prior and superior lien to the two deeds of trust and that ''the various rights and interests of the various mechanic's lien claimants and the claimants of other liens on said real estate and building, appurtenances and improvements, and of the plaintiff, and of the owner thereof, be determined and enforced, that a sale be had of said property and the proceeds thereof be marshaled and distributed according to the respective legal and equitable rights therein.''

Moeller entered his appearance and filed a separate answer and cross-petition setting up his account showing a balance of $36,831.63 due him, for which he asked judgment and a mechanic's lien prior and superior to the two deeds of trust. He asked also for the equitable relief prayed for by plaintiff. Appellant's answer to Schroeter Brothers' petition was a general denial. Appellant's answer to Moeller's cross-petition made some specific denials in addition to a general denial and alleged:

''That the building, improvements and appurtenances upon and to this defendant's real property were to have been constructed, erected and completed by the defendant Moeller strictly according to plans and specifications as provided for in written contracts entered into by the defendant Moeller and this defendant, but this defendant states the fact to be that the defendant Moeller used other, inferior and defective materials in the erection and construction of the building, improvements and appurtenances, and performed the labor incident to the building and erection of said improvements and appurtenances in an unskilled and unworkmanlike manner, all contrary to the terms of the said several contracts.''

No pleading was filed on behalf of the Title Guaranty Company, Walter W. Rumer, Milo Duchon or the holders of any of the notes secured by the two deeds of trust, and on March 12, 1928, an order of default was entered as to them. Thereafter, a referee was appointed to try all issues and report his findings to the court. At the opening of the hearing before the referee the following statements were made by appellant's counsel:

''MR. PAEBEN: I may make this statement, Mr. Referee, at the outset: The presentment of the claim of the plaintiff, of the plaintiff here, that your Honor will get some understanding, you know,

of what my contention will be, the plaintiff in this case may be entitled to a lien, but not one of priority ahead of the deeds of trust, and for this reason that the contract of this plaintiff for the furnishing of hardware on the building in question was entered into by the plaintiff directly with the Croatian Sokol Gymnastic Association, and they are not subcontractors under the general contractor, so their lien would not have a priority over these deeds of trust.

"THE REFEREE: Now, what is your contention as to the other defendants? . . .

"MR. PAEBEN: Well, my position will be, so far as the general contractor is concerned, that he didn't perform his contract in a good many instances and consequently wouldn't be entitled to a lien."

The issue of priority between the liens and the trust deeds was a live one throughout the trial. Appellant's position was stated as follows:

"MR. PAEBEN: Where a building has been in the course of erection, the work that the contract—or improvements have begun and there is a suspension in the work over a period of time and the deed of trust is on the property, and other contractors come on the property subsequent to that time, they do not take priority over the deed of trust."

The Referee inquired of appellant's counsel:

"Are you going to produce evidence to show at what time these various contractors finished the various work they were engaged for; for instance, what time the wrecker finished his work and what time the excavator finished his work, what time the man that put in the foundation finished his work?

"MR. PAEBEN: I am showing that by this witness (Budrovitch)."

It will therefore be seen that the case was tried by appellant on the theory that the building was commenced in 1925, but that there was a complete abandonment of the work before the $100,000 deed of trust was executed and before the contract was made with Moeller. The referee found against appellant as to the facts on this question. The referee found in favor of Schroeter Brothers for the full amount they claimed. He found in favor of Moeller on all but two items; one for $125 for tile floors and marble threshholds, and one for $236 for plaster cornices. These were disallowed. The referee recommended judgment for Schroeter Brothers for $1,085.08, which included interest to date of filing his report. He recommended judgment for Moeller for $40,664.97, which likewise included interest. He recommended that these judgments be liens, upon both the original 125-foot lot and also the seven and one-half foot strip, prior to both deeds of trust. Appellant's exceptions to this report were overruled and a decree was entered in accordance with the referee's

recommendation which provided for an execution sale of the real estate and the improvements thereon, and provided that the proceeds be marshaled and paid out, first, to pay the costs; second, to pay the two mechanic's liens of respondents, proportionately; third, to pay the owners or holders of the notes secured by the two deeds of trust (whether proportionately or otherwise is not stated); and fourth, to pay any balance remaining to appellant. From this decree appellant has appealed.

Appellant sets out thirty-six assignments of error. These, in substance, restate what was set up in its exceptions to the referee's report and in its motion for new trial. Some of these are general and not specific. Many of them restate the same propositions previously stated in others. Some are abandoned by not being referred to in the points and authorities. It would be more helpful to the court if those relied upon on appeal were stated clearly once. Appellant's contentions finally seem to come down to these propositions: That the Duchon deed of trust was entitled to priority over the mechanic's liens because it was given for the purchase price; that the $100,000 deed of trust was entitled to priority over the mechanic's liens because it was executed and recorded before contracts were made with respondents; that Schroeter Brothers' lien statement was insufficient to entitle it to a mechanic's lien because it was not properly itemized; and that Moeller's lien statement was not sufficient to entitle him to a mechanic's lien because it was based upon several separate contracts, was not properly itemized, included non-lienable items, and was not a just and true account. We will first consider the sufficiency of the lien statements and then the question of priorities. "This case is one in equity, and to its hearing here we must apply the rules of equity in such appeals." [Huggins v. Hill, 236 S. W. 1051, l. c. 1053.]

The lien statement of Schroeter Brothers set out a list of the articles of hardware it claimed to have furnished appellant, for which it charged the sum of $971.05. Its proof showed a contract to furnish all hardware required by the architect's plans and specifications for $900. Its proof further showed that it furnished a number of other items (which were not separated in the statement from the contract items) for which it made the charge of $71.05. These items, with the exception of some keys which were delivered to Budrovitch, were all ordered by and delivered to Moeller. There was no satisfactory evidence as to what was the reasonable value of these additional items, it only appearing that the charge of $71.05 was made for all of them. Nor was there any satisfactory evidence that appellant ordered these articles. Moeller in all of his proposals for changes, additions and modifications agreed to furnish all work and material. One of Schroeter Brothers' employees said

these extra items should not have been charged to appellant. Since Schroeter Brothers had a contract for a definite price, it was only necessary to set out in the lien statement the contract price for the contract material. [State ex rel. St. Francois County Building & Loan Assn. v. Reynolds, 288 Mo. 522, 232 S. W. 1035; Grace v. Nesbitt, 109 Mo. 9, 18 S. W. 1118; Hilliker v. Francisco, 65 Mo. 598.] ■ However, when an account is based on *quantum meruit*, one lump sum for all of the articles furnished does not suffice. [Rude v. Mitchell, 97 Mo. 365, 11 S. W. 225.] We, therefore, hold against Schroeter Brothers on the $71.05 item, both because there was not a sufficient account of it in the lien statement and because we do not find the proof sufficient to establish liability on the part of appellant for this charge of $71.05. The decree should be modified to allow the claim of Schroeter Brothers for $900 and the interest accrued on that amount.

■■ We find no merit in appellant's objections to the lien statement of Moeller. It contained a description of the work and a statement of the contract price under the original contract and each written proposal for changes and additions. That was sufficient so far as these written contracts were concerned. [State ex rel. St. Francois County Building & Loan Assn. v. Reynolds, supra.] The other items of material and labor claimed to have been furnished at the verbal request of Budrovitch are sufficiently set out, since they show the date each was furnished, and the amount and kind of material, and since the kind of work, in connection with which the various items, material or labor were furnished, can be determined from the account. "The lien account contemplated by the law 'is such a statement of the claim as fairly apprises the owner and the public of the nature and amount of the demand asserted as a lien.' " [State ex rel. O'Malley v. Reynolds, 266 Mo. 595, 182 S. W. 743; Banner Lumber Co. v. Robson, 182 Mo. App. 611, 168 S. W. 244; Mitchell Planing Co. v. Allison, 138 Mo. 50, 40 S. W. 118.] We hold that Moeller's lien statement meets this test. It is true that Moeller's statement contained some items which the referee disallowed and, as hereinafter stated, there are some others which should not be allowed. ■ However, the fact that an account contains some items which are not lienable or which are disallowed does not effect that part of the account which is good, at least, in the absence of some showing of bad faith. [Allen & Co. v. Frumet Mining & Smelting Co., 73 Mo. 688; Walden v. Robertson, 120 Mo. 38, 25 S. W. 349; Ittner v. Hughes, 133 Mo. 679, 34 S. W. 1110; Landreth Machinery Co. v. Roney, 185 Mo. App. 474, 171 S. W. 681; Nicol Heating & Plumbing Co. v. Neevel & Sons Construction Co., 187 Mo. App. 584, 174 S. W. 161; Craig v. McNichols Furniture Co. (Mo. App.), 187

S. W. 793.] By far the greater portion of Moeller's account is based upon written contracts for definite sums. The items which are disallowed are for small amounts and can easily be separated from the rest. They are not such improper charges that they show bad faith. Additional evidence might have shown some of them proper. There were so many changes made on behalf of appellant and their business was so loosely handled that it is no wonder that some things were overlooked. In fact, the principal cause of failure to pay out on the building and all the subsequent difficulty seems to be due to the fact that appellant's officers did not decide what kind of a building they wanted or at least what they wanted in it until some time after they had let contracts to complete a building.

Appellant makes the further contention that Moeller's lien was based upon several distinct and separate contracts which could not be perfected by filing one lien statement. Appellant's idea apparently is that Moeller should have filed a separate lien statement, for each new proposal for additions and changes, within six months after the completion of the work under each separate proposal. We suppose this also means that he should bring a separate suit on each one if necessary to be within the ninety day period. We are unable to find any such requirement in our mechanic's lien law. Moeller contracted to complete a building, which had only foundations and some of the walls, but he only contracted to complete one building. The various proposals, which he made and which appellant accepted, were merely modifications of and additions to his original contract. The building he completed was still the same building, with the same outside dimensions, the same number of stories and it remained a building constructed for the same original general purposes. The various additional things he did were all parts of the same single whole since they were done while the main contract was being performed, before the building was finished and as a part of the work of completing the building under the original contract. [18 R. C. L. 934, sec. 66; 40 C. J. p. 177, sec. 207, p. 268, sec. 331; 35 L. R. A. (N. S.) 901, 908 note.] "So long as any part of a building is incomplete, the whole is so, and may be moulded into any shape to suit the wishes of the owner, without excluding the alterations so made from the benefit of the lien law." [Phillips on Mechanic's Liens, sec. 220.] A contractor building a house does not have to file one mechanic's lien when he completes the kitchen and another when he completes the bathroom (even though the first plans did not provide for a bathroom). If the work stops and a new contract is later made to complete it. the new contract is separate and distinct from the old. [May v. Mode, 142 Mo. App. 656, 123 S. W. 523.] So, also, if the owner contracts for a small building for making articles by hand and later, after construction has commenced,

changes to a factory operated by steam requiring a much larger building and additional buildings, the new establishment will be considered an entirely different structure and mechanic's liens will not relate back of the change. [Norris' Appeal, 30 Pa. St. 122.] Likewise, when material is furnished under several independent contracts, these do not constitute one contract. Even then, it has been held that all such contracts can be embraced in one lien account, which is sufficient if it is filed within six months after the completion of the work under each contract. [Grace v. Nesbitt, 109 Mo. 9, 18 S. W. 1118.] We hold that Moeller's work was all essentially one complete transaction and that the various additions and changes were not new and independent contracts but were all part of his contract to complete the building.

■ We, however, hold that certain items which Moeller has charged for should not be allowed. One of these was 12,600 pounds of coke, $69.19. The evidence shows that this was used by Moeller to heat the building while his plasterers were working there. This was for his own benefit in doing the work and appellant should not be charged for it. Moeller admitted that through oversight he failed to fulfill some of the architect's specifications. These were overlooked on inspection and were never called to his attention by appellant, but there is no reason, in equity, why he should be paid for something he did not furnish and the value of these omissions should be deducted from the amount of his lien. These are as follows: The china closets were not lined with seven-eighths M and B flooring; the heater in the basement was not connected with the flue by a galvanized iron pipe containing a back damper; there was no fourteen-ounce copper flashing between the roof and the fire walls of the building (this seems to have been the most glaring and important oversight); there were, likewise, no sixteen-ounce copper pipe flanges where the vent pipes came through the roof. The decree should be modified to reduce Moeller's lien claim by the value of these incompleted items. He is entitled to judgment and a lien for the balance of his claim with the interest accrued thereon.

■ This brings us to the question of priorities. Respondents both argue that, since the trustees and note holders, both named and unknown, have defaulted, there is no one here entitled to raise that question, and that appellant cannot do so. That, no doubt, is true of an action at law to enforce a mechanic's lien. This is an equitable action under Section 3180, Revised Statutes 1929, which is very broad in its terms. In such an action a lien may be set up by one defendant against his codefendant and the enforcement of it provided by the decree. [Early v. Smallwood, 302 Mo. 92, 256 S. W. 1053.] The court there said (l. c. 110): "A court of equity once in possession of the *res* and having jurisdiction of the parties will

not relinquish its hold until it has done complete and adequate justice to all parties. It has a long arm for so doing.'' The determination of priority of liens has always been a matter of equitable jurisdiction but is expressly made so in an equitable mechanic's lien suit by the statute. [Huggins v. Hill, 236 S. W. 1051; Coerver v. Crescent Land & Zinc Corp., 315 Mo. 276, 286 S. W. 3.] The purpose of that remedy is ''determining various rights, interests and liens of the various mechanic's lien claimants and claimants of other liens.'' The statute says ''such action may be brought by any owner or lessee of the property or any of it to be affected, or mortgagee or holder of any other incumbrance thereon.'' The owner of the property, therefore, is given the right, as plaintiff, to bring lien claimants and mortgagees into court in order to have their priorities determined. It might well be important to the owner to have this question settled so he would know who was entitled to be paid first.

■ It does not follow, however, that under all circumstances the owner would be entitled to appeal from the determination of priorities between lienholders. For instance, they might agree among themselves as to their priorities or settle the matter by admissions in their pleadings. There is no good reason why the lienholders should not be permitted to settle that question or if they did so why the owner should be permitted to object to it. ■ It is, however, shown by the record in this case that, in order to provide funds for the erection of its building, appellant sold notes to many of its members. These were mostly notes for small amounts, $100 and $500, and were all secured by the one deed of trust securing notes aggregating $100,000. It is apparent that, in the trial below and here, appellant acted in behalf of its members who held these notes. The proper practice would have been to have had at least some of these noteholders intervene, become parties, and defend for themselves and the others. Because of the small interest of any one of them, they no doubt looked to their association to protect them and it was permitted by all parties to try out the issue of priorities before the referee. If we take appellant's view that it is entitled to have a determination of the question of priorities on this appeal, the lien claimants will not be prejudiced because we think the trial court correctly decided the question of priorities between the lien claimants and the $100,000 mortgage. We will, therefore, consider the question.

■ Appellant says that the unknown holders were not properly brought into court because they were given no notice, in the order of publication, of Moeller's claim and that Moeller, at least, cannot obtain a decree of priority over them. The parties interested in the deeds of trust so far as they are disclosed by public records are in court by personal service of summons. This is all that seems to be

required under Section 3181. [See Redlon v. Badger Lumber Co., 194 Mo. App. 650, 189 S. W. 589; Langdon v. Kleeman, 278 Mo. 236, 211 S. W. 877.] If holders of the mortgage notes, who are unknown and undisclosed by the public records, are entitled to a notice by publication, there is nothing in the record before us from which we can determine that there was not sufficient publication. The order of publication is not set out. The record merely recites that there was an order of publication and recites one statement from it. Therefore, we cannot say that it was insufficient to give notice of the pendency of an action in equity in which priorities between all mechanic's lien claimants and mortgagees may be determined. The trial court considered it sufficient and irregularity in the proceedings of courts of record will not be presumed. The presumption is the other way. [White v. Hoffman, 331 Mo. 115, 52 S. W. (2d) 830; Waterman v. Chicago Bridge & Iron Works, 328 Mo. 688, 41 S. W. (2d) 575; Garber v. Mo. Pac. Ry. Co., 210 S. W. 377; Interstate Ry. Co. v. M. R. & C. Railroad, 251 Mo. 707, 158 S. W. 349.]

■ We think it is clear that the Duchon deed of trust is not only entitled to priority over both mechanic's liens but also that the mechanic's lien claimants are not entitled to a lien on the land covered by it. The owner of the land is, of course, entitled to raise that issue. There is no evidence to show that any part of the building is on the land bought from Duchon and the Duchon deed of trust is clearly a purchase money mortgage. The deed from Duchon and the mortgage back to him were made on the same day, which was three months after the making of the contract between Moeller and appellant and was after Moeller had been working more than two months on the building. It was purchased, when the change was made providing a picture show room, for exit space and not to build on. The great weight of authority in this State and elsewhere is that a mechanic's lien for labor or material, furnished to a purchaser of land, is subordinate to a purchase money mortgage made by the purchaser when he obtains a conveyance of the title. [Wilson v. Lubke, 176 Mo. 210, 75 S. W. 602: Russell v. Grant, 122 Mo. 161, 26 S. W. 958; Bridwell v. Clark, 39 Mo. 170; Steininger v. Raeman, 28 Mo. App. 594; Stumbaugh v. Hall (Mo. App.), 30 S. W. (2d) 160, 72 A. L. R. 1516, note; 18 R. C. L. 958, sec. 98; 40 C. J. 287, sec. 366; 40 C. J. 295, sec. 377.] We, therefore, hold that the decree should be modified to state that the Duchon deed of trust is the first lien on the land which it covers, and that the mechanic's liens should be confined to the land upon which Moeller contracted to build appellant's building.

■ We think, however, that the decree is correct in giving priority to respondents' mechanic's liens over the $100,000 deed of trust. Section 3156, Revised Statutes 1929, provides for lien upon a building and the land upon which it is situated for those "who

shall do or perform any work or labor upon, or furnish any material . . . for any building, erection or improvements upon land . . . under or by virtue of any contract with the owner or proprietor thereof, or his agent, trustee, contractor or subcontractor.'' Section 3163, Revised Statutes 1929, provides that mechanic's liens for work and materials ''shall be preferred to all other incumbrances which may be attached to or *upon such buildings,* bridges or other improvements, *or the ground, or either of them, subsequent to the commencement of such buildings* or improvements.'' These provisions are plain. Long ago this court construed them to mean what they clearly say, that a mortgage on an unfinished building was subject to the lien of one, who furnished material to complete the building, even after the mortgage was executed. [Dubois v. Wilson. 21 Mo. 213.] This court then said:

''We think it highly just that those who by their labor or materials have given real value to an unfinished building, which otherwise might never have been finished, should be considered as creditors of the building, and paid out of the proceeds of a sale of it, in preference to creditors whose incumbrances attach after the building has been commenced.''

This result has been reached by a number of other courts construing statutes similar to ours. ''The cases that have held that the lien for labor or material was paramount to the lien of the mortgage executed after the building was commenced, but before such labor or material were furnished, are very numerous. The leading ones are Neilson v. Railway Co., 44 Iowa, 71; Dubois v. Wilson, 21 Mo. 213; Insurance Co. v. Pringle, 2 Serg. & R. 138; Gordon v. Torrey, 15 N. J. Eq. 112; Meyer v. Construction Co., 100 U. S. 457; Davis v. Bilsland, 18 Wall. 659; Parrish & Hazard's Appeal, 83 Pa. St. 111; Insurance Co. v. Paulison, 28 N. J. Eq. 304.'' [Haxtun Steam-Heater Co. v. Gordon (N. D.), 50 N. W. 708.] To these may be added Vilas v. McDonough Mfg. Co. (Wis.), 65 N. W. 488, 30 L. R. A. 778; Kay v. Towsley (Mich.), 71 N. W. 490; Flint & Walling Mfg. Co. v. Douglass Sugar Co. (Kan.), 38 Pac. 566; Keystone Iron-Works Co. v. Douglass Sugar Co., 40 Pac. 273; Dement v. Eastes (Ore.), 264 Pac. 348; LeGrand v. Hubbard (Ala.), 112 So. 827. [See, also, Phillips on Mechanic's Liens, Chap. XIX, and sec. 226, p. 397.] Another authority says: ''If the statute made the lien run from the 'commencement of the building' it will relate back to that time, especially if the different kinds of work constitute but parts of one general whole.'' [Rockel on Mechanic's Liens, p. 350, sec. 130, p. 406. sec. 158: Parrish's Appeal, 83 Pa. St. 111.] ''It is idle to say that there can be two points of time at which such a building is commenced.'' [Haxtun Steam-Heater Co. v. Gordon, supra.]

This rule has been called "the first spade rule" and has been thus stated:

" 'All mechanic's liens commence at the date of the first stroke of the axe or spade, and continue in the erection of the house without; regard to the time of their being filed, or of the doing of the work or furnishing the materials. The man who does the last of the painting or plumbing comes *in pari passu* with him who built the foundation wall.' " [Hammond v. Darlington, 109 Mo. App. 333, 1. c. 343, 84 S. W. 446; see, also, Hydraulic Press Brick Co. v. Bormans, 19 Mo. App. 664; Great Western Planing Mill Co. v. Bormans, 19 Mo. App. 671; Dubois v. Wilson, 21 Mo. 213; Douglas v. St. Louis Zinc Co., 56 Mo. 388; Reilly v. Hudson, 62 Mo. 383; McGonigle v. Foutch, 51 Fed. (2d) 455.]

The theory of this rule is that "the fact of the improvement gives its own notice to all the world." (Brick Co. v. Bormans, 19 Mo. App. l. c. 669); and that it "works no injustice to anyone dealing with the property, as the work itself is notice to all of the mechanic's claims. It enables them by ocular examination to ascertain whether they can do so (buy or take a mortgage) safely." [Wentworth v. Tubbs (Minn.), 55 N. W. 543.] We have another statute, Section 3159, Revised Statutes 1929, which gives priority over an existing mortgage as to the new buildings only, but that is not the question involved in this case.

In this case, before the $100,000 mortgage was made, the new building had been commenced. There was plenty of activity on the ground for anyone to see it. The old building, with the exception of the northeast corner walls and foundation, was torn down. It seems that the front part was first torn down, the ground excavated and the foundation built; and that then the rear portion was partly wrecked and the excavation made there and that this work was completed, after Moeller went to work. At any rate, a new foundation, into which the old part of the building was tied, was commenced and partly completed before the mortgage was made. Anyone could see that a new building was being built. The contract had been let to one man for the wrecking, to another for the excavating and to a third for building the foundations. The architect's plans for a completed building had been drawn and were being carried out by these contractors. Appellant had already decided to obtain bids to complete the building, when the $100,000 mortgage was executed for the purpose of raising money to pay off the old mortgage, to pay for the work then in progress, and to pay for completing the building and equipping it as far as the money would go. It was planned to sell the mortgage notes to the members of appellant Association who knew all about the plans for the building to be built. No one was obligated, when Moeller went to work, to pay

out any money on the mortgage notes. When appellant's members did not respond fast enough to meet the building payments, long after appellant had gone on the job the balance of the notes were used, as collateral security, to obtain a loan to make further payments required to continue the work on the building. It is true that if work on a building entirely ceases and is abandoned and later is resumed, under a new contract between different parties, it is held that mechanic's liens for the new contract cannot relate back to the time when the building was originally commenced. [May v. Mode, 142 Mo. App. 656; Stumbaugh v. Hall, 30 S. W. (2d) 160; 40 C. J. 268, sec. 331.] That is not the situation disclosed here. The referee found that the work was continuous from the start in 1925 to the finish in 1927. and the evidence supports his finding. It seems, in fact, that the new building was going up even while the old building was coming down; and that when the wreckers moved away leaving the northeast walls of the old building standing, Moeller immediately built them into his walls. We think that, under our statutes and the facts of this case, respondents' mechanic's liens are clearly entitled to priority over the $100,000 mortgage, and we so hold.

The decree is reversed and the cause remanded with directions that the trial court hear evidence as to the value of the items required by the architect's specification, above described, which Moeller did not furnish; that the court, thereafter, enter its decree deducting the amount so determined and the amount of the other items, herein disallowed, from Moeller's account; that its decree deduct the items, herein disallowed, from Schroeter Brothers' account; and that its decree fix the priorities between the mechanic's liens and the $100,000 deed of trust as herein stated; that it order the building sold and the mechanic's liens first paid out of the proceeds of the land covered by the $100,000 deed of trust; that the strip of land covered by the Duchon purchase money mortgage shall not be sold but remain subject to that mortgage as a first lien; and that the decree conform in all things to the views expressed in this opinion. *Ferguson* and *Sturgis*, *CC.*, concur.

PER CURIAM:—The foregoing opinion by HYDE, C., is adopted as the opinion of the court. All of the judges concur.