SHERRI B. SULLIVAN, J.
 

 Introduction
 

 The Fru-Con/Fluor Daniel Joint Venture (“the Joint Venture”) appeals from the trial court’s Amended Judgment entered after a bench trial awarding a net judgment in favor of Corrigan Brothers, Inc., d/b/a Corrigan Company Mechanical Contractors (“Corrigan”) in the amount of $2,497,063.50. Corrigan cross-appeals.
 

 Factual and Procedural
 
 Background
 
 [1]
 

 The Procter and Gamble Paper Products Company (“Procter and Gamble”) hired the Joint Venture as the general contractor to build a $485 million paper products manufacturing facility in Cape Girardeau County, Missouri (the “Project”). During the latter half of 1998, the Joint Venture, as general contractor, and Corrigan, as subcontractor, entered into two contracts, the “Papermaking contract” and the “Balance of Plant contract,” both of which called for Corrigan to perform certain pipe fabrication and mechanical work in the construction of the Project.
 

 Throughout the course of the Project, the Joint Venture made substantial modifications to the scope of Corrigan’s work. These modifications came in the form of change orders. A change order
 
 [2]
 
 is an agreement between parties that modifies or changes the original contract terms.
 
 Nicholson Const. Co. v. Missouri Highway and Transp. Com’n,
 
 112 S.W.3d 6, 11 (Mo.App. W.D.2003). The parties had significant disputes over the pricing of these change orders. As a result of their disputes over how much and when Corri-gan would get paid for the change orders, Corrigan quit working on the Project in mid-September, 1999.
 

 The Joint Venture filed suit against Cor-rigan, alleging that Corrigan breached the contracts by not completing the required scope of work. The Joint Venture sought damages for completion of the work by
 
 *319
 
 replacement contractors, back charges, and attorney’s fees and costs. Corrigan counterclaimed for breach of contract, cardinal change and/or abandonment, quantum meruit and intentional or negligent misrepresentation, and sought damages for unpaid work that was performed, prejudgment interest, attorney’s fees and costs.
 

 The trial court found that as to the Papermaking contract, Corrigan breached the contract by walking off the job. At the time Corrigan left, the Joint Venture’s expert witness Brad Bright estimated that about 70% of the base work and change work in the Papermaking contract had been completed. The trial court accepted this estimate and used it for its damage calculations, also using a reasonable labor modifier of 43%
 
 [3]
 
 on top of Corrigan’s base rate, to find that Corrigan had been underpaid by $345,152.74 on the Papermaking contract. The trial court did not award the Joint Venture any damages from Cor-rigan’s breach, because it found the Joint Venture failed to distinguish between work remaining to be performed under Corri-gan’s base contract and unresolved PCA work. The trial court found that Corrigan was not responsible for the unresolved PCA work, and since the Joint Venture did not allocate these costs, it was impossible for the trial court to assess the Joint Venture’s damages for Corrigan’s breach of contract.
 

 As for the Balance of Plant contract, the trial court found that the parties mutually abandoned their agreement for the following reasons. The Balance of Plant contract called for Corrigan’s work to be completed by February 1, 1999, but Corrigan could not even start until approximately that date. The contract required Corrigan to perform its work in accordance with ISOs,
 
 [4]
 
 or drawings, to which the Joint Venture had made “a multitude of changes.” Specifically, the Joint Venture issued 258 revised ISOs amounting to 132% of the initial drawings. The contract required Corrigan to work four 10-hour shifts, but significantly more hours were required from the Joint Venture’s schedule changes and ISO revisions. The trial court held that because the Balance of Plant contract was abandoned, Corrigan was entitled to recover in quantum meruit. The trial court awarded Corrigan a net subtotal of $1,925,624.60, a figure which the trial court arrived at by taking $5,781,032.00, for the reasonable value of Corrigan’s services performed, and subtracting $3,638,388.00, which had already been paid to Corrigan and subtracting $195,273.08 in back charges against Corri-gan.
 

 Both parties appeal from the trial court’s judgment.
 

 Standard of Review
 

 In a court-tried case, the decree or judgment of the trial court will be sustained by the appellate court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law.
 
 Murphy v. Carron,
 
 536 S.W.2d 30, 32 (Mo.banc 1976). Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong.
 
 Id.
 

 
 *320
 

 Discussion
 

 In its first point, the Joint Venture alleges that the trial court erred in failing to award the Joint Venture, as damages for Corrigan’s breach and failure to complete the Papermaking contract, its cost of completing Corrigan’s remaining work under the Papermaking contract. This point assumes Corrigan’s breach of contract and only challenges the trial court’s award of damages to the Joint Venture for the breach. However, Corrigan’s first three points on cross-appeal dispute the trial court’s finding that it breached the Paper-making contract at all. Therefore, we shall address Corrigan’s first three points on cross-appeal prior to addressing whether the amount of damages awarded for such breach were appropriate.
 

 Corrigan’s First Three Points on Cross-Appeal
 

 In its first point, Corrigan claims that the trial court erred in concluding that Corrigan breached the Papermaking contract because the Joint Venture, and not Corrigan, breached the contract, in that the Joint Venture (1) rejected Corrigan’s reasonable pricing proposals, which denied Corrigan compensation for change work and forced Corrigan to subsidize change work; and (2) wrongfully terminated the Papermaking contract after Corrigan justifiably suspended performance pending resolution of payment for change work.
 

 In its second point, Corrigan contends that the trial court erred in concluding that Corrigan breached the Papermaking contract because the parties abandoned the contract prior to the time that Corri-gan suspended work, in that (1) the Joint Venture substantially delayed the start-up and the performance of Corrigan’s work on the contract, (2) the Joint Venture ordered sweeping and continuous changes that significantly changed the cost of the contract from the price initially agreed upon by the parties, (3) the contractual procedure for determining and paying for change costs proved incapable of resolving change payment issues, (4) the Joint Venture pursued a strategy of delaying payment for extra work performed by Corri-gan, and (5) the Joint Venture’s “advance” payment to Corrigan and Corrigan’s stated desire to convert to a time-and-material contract or some other replacement of the original lump sum contract demonstrated the parties’ acknowledgment that the original contract was abandoned.
 

 In its third point, Corrigan asserts that the trial court erred in concluding that Corrigan breached the Papermaking contract because the Joint Venture effected a cardinal change and thereby breached the contract, in that (1) after providing Corri-gan with a complete set of isometric drawings for its bidding and building, the Joint Venture changed or revised approximately 2,500 of the 3,600 drawings, (2) the Joint Venture abused its authority under the contractual provisions for ordering changes and making payment for change orders, and (3) the combination of continuous changes to and revisions of isometric drawings and withholding of reasonable contract modifications fundamentally altered Corrigan’s work under the contract.
 

 Condensed, Corrigan’s first three points assert that the parties abandoned the contract prior to the time that Corrigan suspended work (Pt. 2); or that the Joint Venture breached the Papermaking contract because it rejected Corrigan’s reasonable pricing proposals and wrongfully terminated the Papermaking contract after Corrigan justifiably suspended performance (Pt. 1); and/or that the Joint Venture effected a cardinal change and thereby breached the contract (Pt. 3).
 

 Abandonment
 

 Corrigan cannot be guilty of a breach of the Papermaking contract if it
 
 *321
 
 has been mutually abandoned by the parties.
 
 Schwartz v. Shelby Const. Co.,
 
 338 S.W.2d 781, 788 (Mo.1960). An abandonment may be accomplished by express mutual consent or by implied consent through the actions of the parties.
 
 Id.
 
 Where acts and conduct are relied on to constitute an abandonment, they must be positive, unequivocal and inconsistent with an intent to be further bound by the contract.
 
 Id.
 
 The question of abandonment is essentially one of fact.
 
 Id.
 
 at 787. Our State Supreme Court perspicaciously noted in
 
 Schwartz
 
 that “The law is not complicated, though the facts may be.”
 
 Id.
 
 at 788.
 

 In the instant case, there was no express consent to abandon the contract, so we focus on whether there was implied consent consisting of positive and unequivocal acts and conduct inconsistent with an intent to be further bound by the contract. We find that there was not. Rather, the parties engaged in extensive negotiations and amendments to the Papermaking contract. As changes to the contract became necessary, the Joint Venture assigned a “PCA” number for purposes of pricing the changes. The contract provided that the Joint Venture could require Corrigan to begin change work before the parties had agreed on the price for the work. The price for the change work would be negotiated at a later date. Despite the large number of changes, they were allowed by the contract itself, and did not excuse Cor-rigan’s performance under the contract. The breakdown in negotiations as to the price and payment for these changes ultimately led Corrigan to walk off the project, but did not constitute a mutual abandonment of the contract. Point denied.
 

 Did the Joint Venture Breach the Papermaking Contract?
 

 Corrigan also maintains that the Joint Venture breached the Papermaking contract because it rejected Corrigan’s reasonable pricing proposals and wrongfully terminated the Papermaking contract after Corrigan justifiably suspended performance, and/or that the Joint Venture effected a cardinal change and thereby breached the contract.
 

 Once Corrigan walked off the project, or “suspended its performance,” as Corrigan phrases it, the Joint Venture had every right to terminate the contract. Corrigan had already breached it. Corri-gan maintains that walking off the job is not a breach of contract
 
 as a matter of law.
 

 Merely walking off a job is not a breach of contract as a matter of law. When the owner, or someone standing in his stead, prevents a contractor from completing performance, the contractor’s failure to complete his work is excused, and he is not regarded as having breached the contract.
 

 Curators of University of Missouri ex rel. Shell-Con, Inc. v. Nebraska Prestressed Concrete Co.,
 
 526 S.W.2d 903, 911 (Mo.App.1975). In the instant case, however, the Joint Venture did not prevent Corri-gan from performance. Rather, the two parties could not come to an agreement on pricing, and Corrigan thus voluntarily ceased performance.
 

 In its decision, the trial court adopted Corrigan’s proposed 43% labor modifier in determining the complete value of the unresolved change work.
 
 [5]
 
 Corrigan argues
 
 *322
 
 that since, as the trial court found, Corri-gan’s pricing proposals were reasonable, and the Joint Venture had rejected them during negotiations, then consequently the Joint Venture breached the contract. We find this deduction is not necessarily true.
 

 Although the trial court adopted Corri-gan’s proposed 43% labor modifier, it also found that the Joint Venture did not negotiate in bad faith regarding the pricing of the change work. Rather, it found that the inability of the parties to reach an agreement on the pricing proposals was a consequence of the nature and extent of the Project and the parties’ inability to communicate effectively throughout the duration of the Project. Therefore, even though Corrigan’s proposed 43% modifier was reasonable, it does not necessarily follow that the Joint Venture breached the contract by not accepting it. Rather, the Papermaking contract itself gave the Joint Venture the power to make changes and
 
 assumed
 
 that the parties would come to an agreement on the corresponding price for those changes. The Papermaking contract’s change order clause reads as follows:
 

 [The Joint Venture] may, at any time, by written instructions ... direct [Corri-gan] to make changes, additions, deletions concerning the Subcontract Work, and [Corrigan] shall promptly proceed in compliance with such written instructions .... An increase or decrease in the Subcontract Price resulting from such changes
 
 shall be agreed upon in writing by the parties hereto.
 

 Such an agreement never happened. As such, we agree with the trial court in finding that Corrigan, not the Joint Venture, breached the Papermaking contract when it walked off the job because the Joint Venture would not accept Corrigan’s proposed rates. Point denied.
 

 Corrigan also theorizes that the Joint Venture effected a “cardinal change” and thereby breached the contract. The doctrine of cardinal change breach of contract is rooted in federal contract law.
 
 Beaubois v. Marous Brothers Construction, Inc.,
 
 No, 02-CV-985, 2002 U.S. Dist. Lexis 26625 at *9 (N.D.Ohio Oct. 17, 2002). As a general rule, cardinal change cases have involved suits brought by contractors against the United States Government in the U.S. Court of Claims.
 
 Id.
 
 The
 
 Beaubois
 
 Court noted that “no court has limited the doctrine to cases brought against the United States and the recent trend is to analyze the concept of cardinal change even in the context of private construction contracts.”
 
 Id.
 
 Even so, the Court then went on to decline to adopt the cardinal change doctrine in Ohio, noting that neither Mississippi nor Illinois had adopted the doctrine. There are no Missouri cases addressing the cardinal change doctrine. Applying the cardinal change doctrine to the instant case has no support or precedent in Missouri law. Additionally, the arguments presented by Corrigan in support of its contention that the Joint Venture effected a cardinal change are essentially the same ones presented in support of its arguments that the Joint Venture breached and/or abandoned the contract. Therefore, any discussion would be redundant. Point denied.
 

 The Joint Venture’s Appeal
 

 Now we return to the Joint Venture’s first point on appeal, in which it argues that the trial court should have awarded it its cost of completing Corri-gan’s remaining work under the Paper-making contract. In support of its argument, the Joint Venture asserts that it sustained its burden of proving these damages in that (1) the Joint Venture’s takeover costs of completing the remaining work under the base subcontract, subcontract modifications and unresolved PCAs, which Corrigan was obligated to perform,
 
 *323
 
 exceeded the price for which Corrigan was bound to complete such work; and (2) the Joint Venture was not required to allocate its completion costs for the base subcontract, modifications and unresolved PCA work.
 

 The trial court rejected the Joint Venture’s claim for damages from Corrigan’s failure to complete its work on the Paper-making contract because the Joint Venture’s evidence did not distinguish between work remaining to be performed under Corrigan’s base contract and unresolved PCA work.
 

 The Joint Venture contends that the calculation of its damages under Missouri law is simple and straightforward, and may be expressed as the cost to the Joint Venture to complete Corrigan’s remaining scope of work, less the unpaid balance of the total price of Corrigan’s remaining work. The Joint Venture asserts that no allocation of takeover costs was necessary for the trial court to properly determine the Joint Venture’s damages based on the evidence before it.
 

 The Papermaking contract provides for Corrigan’s failure to complete its work by authorizing the Joint Venture “to take over or cause others to take over any work being performed and to be performed under this Subcontract.” The Joint Venture contends that this provision makes Corri-gan responsible for the cost of every change order transmitted before Corrigan suspended its work. We disagree. We reject the Joint Venture’s contention that Corrigan would be responsible for the unresolved PCAs. We find that a more logical interpretation of the contract would be that the contract made Corrigan responsible for the cost of completing the work under its base contract, and that the cost of the Joint Venture’s change orders remained the responsibility of the Joint Venture. Because the Joint Venture did not distinguish between these two items, making it “impossible to know what portion of the takeover costs [were] Corrigan’s responsibility, and what portion would be the Joint Venture’s responsibility,” the trial court could not award the Joint Venture
 
 any
 
 damages for its takeover costs.
 

 The Joint Venture argues that it was not required by the contract to allocate its takeover costs. Regardless of whether the contract did not require the Joint Venture to allocate its takeover costs, we do not find that Corrigan is obligated to pay for the unresolved change work in this case. Because the Joint Ventee did not separate those costs out, it is not entitled to any damages. Point denied.
 

 In its second point, the Joint Venture contends that the trial court erred in awarding Corrigan penalty interest and litigation expenses pursuant to the Missouri Prompt Payment Act, Section 431.180,
 
 [6]
 
 on Corrigan’s claims under the Balance of Plant contract because Corri-gan was not entitled to litigation expenses under the act in that the trial court’s damage award was in quantum meruit and not premised on a “scheduled payment” due under the Balance of Plant contract and, further, no “scheduled payment” was due under the Balance of Plant contract.
 

 Under Section 431.180, the trial court may award litigation costs and interest upon a showing that the parties entered into a contract for construction work, and the Joint Venture failed to make payments in accordance with the contract. The trial court found that the parties entered into the Balance of Plant contract for construction work in late 1998, and that the Joint Venture withheld payment to Corrigan in the amount of $66,000.00. The trial court awarded Corrigan $918,910.24 in prejudgment interest (1 ½ % per month from
 
 *324
 
 March 8, 2000, the date of the lien filing, through January 6, 2003, the date of judgment), and $307,085.70 in attorney’s fees pursuant to Section 431.180.
 

 The trial court’s award of damages in quantum meruit does not preclude the trial court from also awarding interest and attorney’s fees under the Prompt Payment Act, because the parties did enter into a contract, and the statute does not require the contract to be in existence throughout the duration of the project. Even if the trial court found that the Balance of Plant contract had been abandoned, the parties still entered into it, and the Joint Venture still withheld payment to Corrigan for its work done pursuant to the contract. Therefore, the statute’s requirements were met, and thus the trial court was well within its rights to award these additional damages. Further, the statute specifically provides for an independent cause of action to recover penalty interest and litigation expenses
 
 “in addition to any other award of damages.”
 
 Section 431.180.2 (Emphasis added).
 

 The Joint Venture further argues that no “scheduled payment” was due under the Balance of Plant subcontract. On the contrary, the contract required “monthly or other periodic progress payments.” On August 31, 1999, Corrigan submitted pay application number 11 for $66,282.53. The Joint Venture refused to pay Corrigan’s pay application number 11. We find this is sufficient evidence that a scheduled payment was due, and the Joint Venture refused to pay it. Point denied.
 

 Corrigan’s Last Two Points On Cross-Appeal
 

 In its fourth point, Corrigan states that the trial court erred in assessing back charges against Corrigan on the Balance of Plant work because the Joint Venture breached the Balance of Plant contract in that the Joint Venture failed to give Corrigan seventy-two (72) hours to cure any defective work after a notice of default as required by the Balance of Plant contract.
 

 The Balance of Plant contract provides: If Subcontractor for any reason fails or is unable to commence, prosecute and complete the Subcontract Work skillfully, promptly, and diligently ... [the Joint Venture] shall have the right, if it so elects and without prejudice to any other rights it may have, by giving seventy-two (72) hours written notice to Subcontractor, to take over or cause others to take over any work being performed and to be performed under this Subcontract, or any part thereof, ... and to complete such work for the account of Subcontractor by whatever method [the Joint Venture] deems reasonably practicable and expedient....
 

 Corrigan maintains that by refusing to give Corrigan a chance to cure any defective work as required by the Balance of Plant contract, the Joint Venture waived any entitlement to back charges. We disagree. The trial court found that the parties had abandoned the contract. A contracting party cannot be guilty of a breach of a contract that has been mutually abandoned.
 
 Schwartz,
 
 338 S.W.2d at 788. Thus, Corrigan’s claim that it was entitled under the contract to a 72-hour period to cure its defective work fails. The trial court assessed back charges to reduce Corrigan’s
 
 quantum meruit
 
 recovery by the amount needed to correct Corrigan’s defective work under the Balance of Plant contract, and thus was entirely proper. Point denied.
 

 In its fifth and final point, Corri-gan maintains that the trial court erred in attempting to reduce the rate of post-judgment interest in the amended judgment because Corrigan was entitled to an award of penalty interest at the rate of one and one-half per cent (1 ½ %) per month under
 
 *325
 
 the Prompt Pay Act, in that: (1) the trial court lacked jurisdiction to reduce the award of penalty interest in the original judgment because the rate of post-judgment interest was not raised in a timely filed after-trial motion; or (2) assuming,
 
 arguendo,
 
 the court had jurisdiction to amend the rate of interest, the court erred in concluding that the Prompt Pay Act does not apply to post-judgment interest awards.
 

 In a footnote in its amended judgment, the trial court indicated that post-judgment interest was fixed at the nine percent (9%) per annum rate specified by Section 408.040.1. We find that the trial court was well within its discretion to set the interest rate in such fashion. The footnote in the amended judgment did not amend the original judgment, as there was nothing in the original judgment regarding post-judgment interest. As such, the rate was set under Missouri law; i.e., the 9% per an-num rate set forth in Section 408.040.1. We recognize that there was mention in the accompanying memorandum that post-judgment interest would be awarded at $949.62 per day, which reflected the Prompt Pay Act penalty interest rate. However, this mention was not part of the “judgment.”
 

 Further, Corrigan was not, as it argues, “entitled” to an award of penalty interest at the rate of one and one-half per cent (1½
 
 %)
 
 per month under the Prompt Pay Act, Section 481.180. Section 431.180.2 provides, in pertinent part, that the Court
 
 “may ...
 
 award interest at a rate of
 
 up to
 
 one and one-half percent per month .... ” (Emphasis supplied). The use of “may” indicates that the trial court’s decision to award interest is discretionary.
 
 City of Cottleville v. American Topsoil, Inc.,
 
 998 S.W.2d 114, 117 (Mo.App. E.D.1999).
 

 As a side note, “where a judgment creditor appeals on the ground of inadequacy from a recovery in his favor, and the judgment is affirmed on appeal, the judgment creditor is not entitled to interest pending such appeal.”
 
 Investors Title Co. v. Chicago Title Ins. Co.,
 
 18 S.W.3d 70, 72 (Mo.App. E.D.2000). As such, Corrigan is not entitled to post-judgment interest pending this appeal. Corrigan’s last point on cross-appeal is denied.
 

 The judgment of the trial court is affirmed.
 
 [7]
 

 GARY M. GAERTNER, P.J., and MARY K HOFF, J., concur.
 

 [1]
 

 . At the trial court level, neither party requested findings of fact pursuant to Missouri Rule of Civil Procedure 73.01. However, the trial court believed that an explanation of its decision was appropriate and thus recited some factual background. In the same vein, this Court will attempt to glean and concisely recite from the voluminous factually detailed record only the facts pertinent to the points on appeal.
 

 [2]
 

 . Change orders are sometimes referred to as potential change authorizations, or "PCA's” in this opinion
 

 [3]
 

 . A labor modifier accounts for conditions under which the labor has to be performed, which is added to the base labor rate. Examples of such conditions would be working in cramped spaces, high temperatures, dangerous altitudes, and so on.
 

 [4]
 

 . "ISOs” refer to Isometric Drawings, which are drawings reflecting the design and placement of mechanical piping and associated materials for the paper machines.
 

 [5]
 

 . As provided by the contract, Corrigan submitted pricing proposals for the unresolved changes. For most changes that contained a labor component, Corrigan applied a 43% modifier to its base labor rate to account for conditions under which the work had to be performed. The Joint Venture favored a 10-15% labor modifier, which obviously resulted in a wide disparity in the parties’ proposed pricing for the changes.
 

 [6]
 

 . All statutory references are to RSMo 2000, unless otherwise indicated.
 

 [7]
 

 . Corrigan has filed a Motion for Award of Attorney’s Fees. This court has the authority to allow and fix the amount of attorney's fees on appeal.
 
 Dominion Home Owners Ass'n, Inc. v. Martin,
 
 953 S.W.2d 178, 183 (Mo.App. W.D.1997). We determine that since each party respectively lost its own appeal and prevailed upon the other's appeal, that each party should bear its own attorney’s fees.