Richard NEISWONGER, Appellant,

v.

Arthur MARGULIS, Margulis & Grant, P.C., Ronald Jenkins and Jenkins & Kling, P.C., Respondents.

No. ED 86948.

Missouri Court of Appeals, Eastern District, Division One.

Oct. 17, 2006.

William K. Meehan, University City, MO, for appellant.

Robert T. Haar, Lawrence B. Grebel, St. Louis, MO, for respondents.

PATRICIA L. COHEN, Judge.

### Introduction

Richard Neiswonger (Plaintiff) appeals from a summary judgment entered by the Circuit Court of the City of St. Louis in favor of Arthur Margulis, Margulis & Grant, P.C., Ronald Jenkins, and Jenkins & Kling, P.C. (collectively Defendants) on Plaintiff's suit for professional negligence and breach of contract.[1] We affirm.

### Statement of the Facts and Proceedings Below

Plaintiff pled guilty to wire-fraud and money laundering on September 3, 1998 in the U.S. District Court for the Eastern District of Missouri. At his sentencing, Plaintiff admitted to falsely marketing a "business opportunity program" which resulted in 1,300 victims and total losses to the victims of $13,000,000.

Plaintiff first learned he was the target of a federal grand jury investigation in September 1997.[2] To handle the legal problems related to the federal grand jury investigation, Plaintiff hired Mr. Margulis and Mr. Jenkins.

Prior to resolving his criminal case, Plaintiff contacted his ex-wife, whom he had divorced in October 1997, for assistance with an anticipated restitution payment to the government. At the time of their divorce, Plaintiff and his wife had a net worth of approximately $10,000,000. In settlement of their divorce, Plaintiff and his wife each received $5,000,000. Plaintiff transferred $4,000,000 to an off-shore trust account in the Cook Islands. The admitted purpose of the trust account was to protect the funds from creditors as well as the government.

In February 1998, Mr. Margulis and Mr. Jenkins, reached an agreement with the government requiring Plaintiff to serve 18 months in prison and pay $2,750,000 in restitution. The parties formalized the plea agreement in August 1998.

After Plaintiff entered his plea but before sentencing, Plaintiff's ex-wife agreed to contribute $1,350,000 to the restitution payment. Thereafter, Plaintiff's ex-wife transferred the money to a Margulis & Grant, P.C. trust account. Likewise, Plaintiff transferred $1,425,000 from his Cook Islands account to the same Margulis & Grant, P.C. account. On October 2, 1998, Mr. Margulis paid the required $2,750,000 restitution with a check drawn on his firm's trust account and notified the United States Probation Office of the payment.

Despite the fact that Plaintiff transferred only $1,425,000 from his Cook Islands funds in payment of restitution, the probation office's final Pre-sentence Report erroneously reflected a balance of $306,491 in the Cook Islands account rather than the accurate figure, $1,629,491 ($3,056,491 less $1,425,000). The parties do not dispute that prior to sentencing neither Plaintiff nor his attorneys advised either the probation office or the U.S. District Court of the error. Accordingly, at Plaintiff's sentencing, the Pre–Sentence Report reflected a Cook Islands balance of slightly over $300,000 rather than in excess of $1,500,000.

---

**1.** Counts I, III, IV, V, and VI assert claims of legal malpractice, breach of fiduciary duty, negligent misrepresentation, punitive damages and breach of a contract to provide competent legal services, respectively. We refer to these counts collectively as professional negligence claims. Count II is a claim for breach of a settlement agreement between Plaintiff and Defendants.

**2.** Plaintiff had, however, been the subject of a Federal Trade Commission investigation and had settled with the FTC in the Fall of 1996.

The U.S. District Court sentenced Plaintiff to 18 months in prison on December 21, 1998. In June 2000, Plaintiff was released from prison. After his release, Plaintiff transferred the remaining $1,300,000 from his trust account in the Cook Islands to an account in the United States. The government learned of the transfer, seized the funds and filed a forfeiture action in U.S. District Court. Plaintiff hired and paid attorney Scott Rosenblum $36,000 to represent him in the forfeiture matter. Plaintiff settled the forfeiture action for $750,000 and the government refunded the remaining $550,000.

Plaintiff believed that because Mr. Margulis and Mr. Jenkins rendered improper legal advice regarding his ex-wife's contribution to the required restitution payment, he was exposed to future litigation and seizure of funds. Consequently, Plaintiff demanded the return of the $100,000 retainers he paid Mr. Margulis and Mr. Jenkins in return for a release of professional negligence claims.

In a letter dated February 27, 2001, Mr. Margulis agreed to pay $200,000 on behalf of himself and Mr. Jenkins. In the letter, Mr. Margulis made payment of the $200,000 contingent upon Plaintiff's execution of releases. In the months following the letter, Plaintiff did not execute releases and neither Mr. Margulis nor Mr. Jenkins paid Plaintiff the $200,000. In a letter dated May 16, 2002, Plaintiff authorized Mr. Rosenblum to call Mr. Margulis and Mr. Jenkins with "a final settlement for a reduced $150,000." Although Mr. Rosenblum telephoned Mr. Margulis with the offer, the parties did not reach a new agreement.

In May 2003, Plaintiff filed a multi-count lawsuit seeking damages for professional negligence and breach of the $200,000 settlement agreement. With respect to the professional negligence claims, Plaintiff alleged that:

> As a result of the advice and counsel of Defendants Margulis and Jenkins, Plaintiff suffered damages in the amount of Seven Hundred Fifty Thousand Dollars ($750,000) as represented by the amounts of money that were forfeited to the United States Government above and beyond the amounts of restitution that he paid and he expended Thirty–Six Thousand Dollars ($36,000) in legal fees.

With respect to the breach of contract claim, Plaintiff alleged that Defendants agreed to pay $200,000 "as and for settlement of all claims for malpractice and inadequate assistance of counsel." The trial court granted summary judgment in favor of Defendants on all counts, concluding that Plaintiff suffered no damages, acted *in pari delicto* and abandoned the settlement agreement when he filed the professional negligence suit. Plaintiff appeals.

### Standard of Review

Our review of summary judgment is *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). We will uphold the grant of summary judgment on appeal if the movant is entitled to judgment as a matter of law and no genuine issues of material fact exist. *Id.* at 377. "[A] 'genuine issue' exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Id.* at 382. We view the record in the light most favorable to the party against whom judgment was entered, according that party all reasonable inferences that may be drawn from the record. *Id.* at 376. We accept as true facts contained in affidavits or otherwise in support of a party's motion unless contradicted by the non-moving party's response to the summary judgment motion. *Id.*

### Discussion

In his first point, Plaintiff contends the trial court erred in granting summary judgment in favor of Defendants on his claims for professional negligence because he raised genuine issues of material fact with respect to: (1) whether he suffered actual damages and (2) whether he acted *in pari delicto.*[3]

■ To establish a claim for professional negligence, a plaintiff must plead and prove, *inter alia,* damages proximately resulting from his attorney's negligence. *Mogley v. Fleming,* 11 S.W.3d 740, 747 (Mo.App. E.D.1999). More specifically, a plaintiff must establish that "but for" his attorney's negligence, the result of the underlying proceeding would have been different. *Id.*

The gist of Plaintiff's argument appears to be that "but for" his lawyers' negligent advice regarding his ex-wife's contribution to the restitution payment and their failure to advise the government of the erroneous Pre–Sentence Report, Plaintiff would not have forfeited $750,000 of the Cook Islands funds he transferred to the United States after his release from prison. Defendants respond that, in fact, Plaintiff ultimately paid the government $575,000 less than the plea agreement required and therefore Plaintiff suffered no economic damage. Moreover, Defendants assert that there is no competent evidence in the record to support the proposition that the government would have refrained from attempts to obtain the remaining Cook Islands funds once transferred to the United States even if Defendants and/or Plaintiff had corrected the erroneous Pre–Sentence Report.

■ As an initial matter, we cannot agree with Plaintiff's contention that his attorney's conduct caused him an economic loss. First, Plaintiff concedes that although he was obligated under the plea agreement to pay $2,750,000 in restitution from his Cook Islands trust account, he only paid $1,425,000. Moreover, Plaintiff does not contend that Defendants' allegedly negligent conduct caused him to pay more than $2,750,000, his obligation under the plea agreement. Indeed, the record reveals the ultimate cost to Plaintiff was $2,211,000: the initial $1,425,000 in restitution, $750,000 in settlement of the forfeiture action, and $36,000 in attorney's fees. Without proof of loss, Plaintiff cannot establish a claim for damages for legal malpractice. *London v. Weitzman,* 884 S.W.2d 674, 677 (Mo.App. E.D.1994).[4]

■ Even if we were to determine that Plaintiff suffered an economic loss, Plaintiff's claim falls for failure to establish proximate causation. More specifically, Plaintiff has proffered insufficient evidence to raise a factual dispute with respect to the allegation that Defendants' conduct was the "but for" causation of the forfeiture action (and therefore the loss of the $750,000 plus the $36,000 in attorney's fees).

To support his causation argument, Plaintiff principally relies on deposition testimony from his expert, John Wesley Hall, a criminal defense attorney from Little Rock, Arkansas. Mr. Hall testified at his deposition that "legal advice that the secret contribution was okay" and a failure to correct the Pre–Sentence Report "exposed the client and [lawyers] to *whatever*

3. Because Plaintiff was unable to establish damages, an essential element of his professional negligence claims, we need not address his arguments as to whether his conduct was *in pari delicto.*

4. We note that Plaintiff has not claimed losses other than economic or monetary.

*the government chooses to do* when they come after them." (emphasis supplied). Mr. Hall also stated that "if the ['secret contribution'] were handled openly and the government was told about it, it wouldn't have been a problem." When asked whether knowledge of the "secret contribution" would have prompted the government to seek additional restitution, Mr. Hall stated he had "no knowledge" but admitted the possibility. Notably, Mr. Hall opined that the government "wanted the money from the offshore account"; "[t]hey knew what it was and they knew it was out of the country and they knew the amount and that was to be the restitution."

Contrary to Plaintiff's contention, Mr. Hall does not state that "but for" the Defendant's failure to properly advise Plaintiff, he would not have been subject to a forfeiture action. Rather, Mr. Hall asserts that the government's focus was always on recovering the funds from the offshore account and that even if the lawyers had corrected the information in the Pre–Sentence Report the government might very well have sought additional restitution. In short, it is clear from Mr. Hall's testimony that the Defendants did not cause the government's efforts to obtain the off-shore funds; recovery of the offshore funds was, *inter alia*, the government's acknowledged purpose and the forfeiture action was simply consistent with the government's actions from the inception of the prosecution.

 Moreover, in light of Mr. Hall's admission that the money from the offshore account "was to be the restitution," his statement that if the government had been told about the fact that the restitution payment did not come entirely from the Cook Islands account, "it wouldn't have been a problem" is sheer speculation. Expert opinions founded on speculation are not sufficient to raise disputed issues

of fact. *See Rigali v. Kensington Place Homeowner's Assn.*, 103 S.W.3d 839, 845 (Mo.App. E.D.2003); *see also Williams v. Preman*, 911 S.W.2d 288, 298 (Mo.App. W.D.1995) *overruled on other grounds by Klemme v. Best*, 941 S.W.2d 493 (Mo.1997) ("The expert opinion need not be airtight or unassailable, but the subject matter must not be inherently unpredictable, and the evidence must show that the opinion is sufficiently grounded in careful and comprehensive analytical thought to have strong probative value on the issue of proximate cause.")

Plaintiff's reliance on *Collins v. The Missouri Bar Plan*, 157 S.W.3d 726 (Mo. App. W.D.2005), and *Williams v. Preman* is not persuasive. As relevant to this case, *Collins* simply stands for the proposition that summary judgment is inappropriate where the plaintiff can establish "a causal link between the alleged negligence and any loss incurred." 157 S.W.3d at 735. As discussed above, Plaintiff has not proffered sufficient evidence to raise disputed issues with respect to either a loss or a causal link between the alleged negligence and the loss.

*Williams* is equally unhelpful. As Plaintiff points out, in *Williams*, the court reversed a trial court ruling granting a motion for a directed verdict on the grounds that the plaintiff presented expert testimony that was neither "speculative [n]or vague" on the loss in question. By contrast, here, Plaintiff failed to adduce non-speculative evidence that "but for" the Defendants' failure to warn Plaintiff that a contribution from his ex-wife violated the plea agreement or to advise the U.S. District Court of the error in the Pre–Sentence Report, the government would not have sought to obtain the additional Cook Islands funds by way of forfeiture or otherwise. Point denied.

In his second point, Plaintiff contends the trial court erred in granting summary judgment in favor of Defendants on Plaintiff's claim of breach of the February 27th settlement agreement between him, Mr. Margulis, and Mr. Jenkins. Specifically, Plaintiff claims the trial court erred in finding that he: (1) abandoned the original agreement and (2) reached no agreement with Defendants after making a revised offer.

■ An agreement to settle is governed by contract law. *Tirmenstein v. Central States Basement*, 148 S.W.3d 849, 851 (Mo.App. E.D.2004). To establish breach of a contract, plaintiff must establish: "(1) the existence of a valid contract; (2) the rights and obligations of the respective parties; (3) a breach; and (4) damages." *See Rhodes Engineering Co., Inc. v. Public Water Supply Dist. No.1 of Holt County*, 128 S.W.3d 550, 560 (Mo.App. W.D.2004). However, as the Missouri Supreme Court held in *Schwartz v. Shelby Const. Co.*, 338 S.W.2d 781, 788 (Mo.1960), a "[p]laintiff cannot be guilty of a breach of the contract if it has been mutually abandoned." *See also Fru–Con/Fluor Daniel Joint Venture v. Corrigan Brothers Inc.*, 154 S.W.3d 330, 335 (Mo.App. E.D.2004). With respect to settlement agreements in particular, we have held that "after a settlement is made, if the defendant refuses to comply with its terms in whole or in part, the plaintiff may enforce the settlement agreement or abandon the settlement and proceed under the original cause of action." *Estate of Knapp by and through Igoe v. Newhouse*, 894 S.W.2d 204, 206 (Mo.App.E.D.1995). *See also McKean v. St. Louis County*, 964 S.W.2d 470, 471 (Mo.App. E.D.1998); *Dombroski v. Cox*, 431 S.W.2d 680, 682 (Mo.App.1968).

■ We agree with the trial court that even if a valid contract existed, Plaintiff failed to establish a breach because the record supports the conclusion that Plaintiff abandoned the agreement. Abandonment of an agreement may be accomplished by express mutual consent or implied consent through the actions of the parties. *Fru–Con/Fluor Daniel Joint Venture*, 154 S.W.3d at 335. Actions indicative of implied consent must be "positive, unequivocal and inconsistent with an intent to be further bound by the contract." *Id.*

■ Following settlement of the forfeiture action, Plaintiff demanded, through his new attorney Scott Rosenblum, that Mr. Jenkins and Mr. Margulis return $200,000 in legal fees in exchange for a Plaintiff's release of any professional negligence claims against them. Mr. Margulis initially agreed, in a letter dated February 27, 2001, to return the $200,000 retainer contingent upon Plaintiff's execution of releases from professional liability. Mr. Margulis and Mr. Jenkins never paid Plaintiff and Plaintiff never executed releases. Instead, Plaintiff responded to the Defendants' failure to abide by the agreement by offering to settle the claims for the return of $150,000. Plaintiff does not dispute that neither Mr. Margulis nor Mr. Jenkins agreed to pay the $150,000. Having failed to obtain the $150,000, Plaintiff brought this multi-count suit for professional negligence and sought, not $150,000, which formed the basis of his revised offer, but the $200,000 he initially demanded.

There is no dispute that none of the parties complied with the terms of the original agreement. Mr. Margulis and Mr. Jenkins never returned the $200,000 and Plaintiff never executed the releases. More importantly, Plaintiff did not seek to enforce the original agreement but rather made a new offer. Finally, even assuming Plaintiff did not abandon the $200,000 settlement agreement by offering $150,000, when Plaintiff filed this lawsuit he unques-

tionably abandoned the $200,000 settlement agreement and elected to proceed under the original cause of action, i.e. the professional liability claims. Accordingly, we find the trial court did not err in granting summary judgment on Plaintiff's claim of breach of contract. Point denied.

### Conclusion

The judgment of the trial court is affirmed.

MARY K. HOFF, P.J., and CLIFFORD H. AHRENS, J., Concur.