

# Missouri Court of Appeals

## Southern District

### Division One

GRAU CONTRACTING, INC., )
)
Plaintiff, )
)
vs. )
)
CAPTIVA LAKE INVESTMENTS, LLC, )
)
Appellant/Cross-Respondent, )
) Nos. SD32382 and SD32406
MISSOURI BUILDERS SERVICE, INC., ) Consolidated
)
Respondent/Cross-Appellant, )
) FILED: March 10, 2014
QUESTEC CONTRUCTORS, INC., )
BUTLER SUPPLY, INC., )
HOUSE OF CARPET, INC., )
and MEYER ELECTRIC CO., INC., )
)
Respondents. )

APPEAL FROM THE CIRCUIT COURT OF CAMDEN COUNTY

Honorable Bernhardt C. Drumm, Jr., Judge

**<u>AFFIRMED</u>**

We affirm a judgment enforcing mechanics' liens and granting them priority

over a construction lender's successor in interest.

## Background

This litigation arises from the failed Majestic Pointe condominium development, a project located on a several-acre point jutting into the Lake of the Ozarks. By August 2005, the developer had nearly finished one condo building and planned to build the next one, but the project's lender did not wish to finance additional construction.

Discussions with National City Bank ("Bank") led to its agreement to finance finish work on the existing building and construction of another high-rise condo. More specifically, this March 2006 construction loan agreement contemplated construction of "a sixty-one (61) unit condominium tower known as 'Building 4'"; interior finish of "three unfinished units of a twenty-four (24) unit condominium tower known as 'Building 5'"; and a construction deed of trust in favor of Bank to secure a $20 million construction loan. This deed of trust was recorded on March 15, 2006.

The development failed. Mechanics' liens and enforcement actions were filed by Respondents, providers of work and material at Building 4 after Bank recorded its deed of trust. Later, Appellant ("Captiva") bought Bank's construction loan, foreclosed the deed of trust, acquired the property, and was substituted for Bank in the mechanics' lien litigation.

In a series of partial summary judgments, the trial court granted mechanics' liens to Respondents and found "under the first spade rule and the waiver doctrine, the mechanic's liens of [Respondents] are prior and superior to the interest of

Captiva, which is derived from [Bank's] deed of trust ...."  Later, § 431.180[1] claims for interest and attorney fees were bench tried, yielding a final judgment from which Captiva appeals and Respondent Missouri Builders cross-appeals.  We consider Captiva's complaints first.

## Captiva's Appeal

### *Point I – First Spade Priority*

Captiva challenges the summary judgment determination that Respondents had first spade priority over Bank's deed of trust.  Summary judgment is proper when there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  ***ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993).  "Because our review is *de novo,* the trial court's order may be affirmed in this Court on an entirely different basis than that posited at trial."  ***Id***. at 387-88.

### *Lien Priorities – The DeGeorge Case*

Our supreme court addressed priorities of mechanics' liens and deeds of trust most recently in ***Bob DeGeorge Associates, Inc. v. Hawthorn Bank***, 377 S.W.3d 592 (Mo. banc 2012).  Deeds of trust are subject to Missouri's recording statutes (***id***. at 597), but mechanics' liens are not "because they arise by operation of statute[s]" which "are construed favorably to uphold the rights of laborers and materialmen."  ***Id***. at 598.  "Unlike recording an instrument under the recording statutes, filing a mechanic's lien is irrelevant for the purpose of determining first-in-time priority between competing encumbrances on real property."  ***Id***.

---

[1] Also called the Private Prompt Payment Act.  Statutory citations are to RSMo 2000.

> Two statutory provisions govern the priority of a mechanic's lien against other encumbrances on real property. For encumbrances on the land, the "first spade rule" under section 429.060 gives the mechanic's lien relation-back priority to the date when work commenced …. So long as a mechanic's lien arises on the land and is filed properly, it will have priority over any third-party encumbrance attaching after the date work began. In contrast to a mechanic's lien attached to the land, section 429.050 gives a mechanic's lien attached to the structure or improvements priority over all other encumbrances ….

*Id*. (internal quotation and citations omitted). Thus, "priority of a mechanic's lien will vary based on the type of property. A mechanic's lien on land is given relation-back priority under section 429.060, whereas a mechanic's lien on a building, erection, or improvement is given complete priority under section 429.050." *Id*. at 598-99.[2]

As to the land (as opposed to the complete priority on improvements), "a deed of trust recorded after the commencement of work on a project is inferior to any mechanic's liens arising on the land from that work." *Id*. at 599. This is known as the "first spade rule" for mechanics' liens. *Id*. "'All mechanics' liens commence at the date of the first stroke of the axe or spade, and continue in the erection of [a structure], without regard to the time of their being filed, or of the doing of the work or furnishing the materials.'" *Id*. (quoting ***Schroeter Bros. Hardware Co. v. Croatian "Sokol" Gymnastic Ass'n***, 58 S.W.2d 995, 1003 (Mo. 1932)).

---

[2] By its terms, § 429.050 limits the "complete" priority noted in ***DeGeorge*** to "buildings, erections or improvements for which [lienable items] were furnished or the work was done …."

Captiva offers alternative challenges to the trial court's finding that these mechanics' liens had first spade priority over Bank's deed of trust.

First, Captiva characterizes § 443.055, which governs future advance deeds of trust, as a statutory exception to first spade priority. No support is cited for this proposition, which Captiva seems to concede is contrary to recent decisions of this court. *See **Altom Constr. Co. v. BB Syndication Servs., Inc.**,* 359 S.W.3d 146, 150-51 (Mo.App. 2012); ***Glenstone Block Co. v. Pebworth**,* 330 S.W.3d 98, 102 (Mo.App. 2010). Indeed, Captiva acknowledges elsewhere in its brief the line of cases holding construction liens to be inferior to mechanics' liens, both before and since adoption of § 443.055.

Still, Captiva urges that no prior case has *directly* considered whether § 443.055 trumps the first spade rule. While this may be so, we cannot fail to note a law student's keen foresight three decades ago regarding § 443.055 in this context:

> The priority rules of the new statute [§ 443.055] conflict with sections 429.055 and 429.060, which grant mechanics' lienors priority as to the improvements for which they contributed labor or capital. Good arguments exist for applying either law to resolve priority disputes between construction mortgagees and mechanics' lienors. The legislature, however, neither expressly stipulated which would apply nor expressly overruled *H.B. Deal* [*Constr. Co. v. Labor Discount Center, Inc.*, 418 S.W.2d 940 (Mo. 1967), which granted mechanics liens priority over construction mortgage advances] and its progeny. *The mechanics' lien statute will likely still control.*
>
> The Missouri Supreme Court has broadly protected mechanics' lienors, relying on a strong statutorily expressed policy. It seems unlikely that this judicial attitude will be reversed absent strong legislative directive, which is not present here.

Rita Carper Sowards, Comment, *Future Advances in Missouri*, 49 Mo. L. Rev. 103, 117 (1984) (emphasis added; footnotes omitted). "The result is that a mechanics' lien arising from the construction … [will be] prior (as to the land and improvements) to the construction mortgage under which the advances are made." ***Id***. at 117 n.97.

At any rate, we reject Captiva's theory, which hinges specifically upon subsection 5 of § 443.055:

> As to any third party who may acquire or claim any rights in or a lien upon the encumbered real property, the priority of the lien of a security instrument securing future advances or future obligations shall date from the time the security instrument is recorded, whether or not any third party has actual notice of any such advances or obligations and whether or not such advances or obligations are optional or obligatory with the lender.

Yet as applied to this case, § 443.055.5 confirms only the unremarkable proposition that priority of Bank's deed of trust was linked to its date of recording. The statutory text does not address priority vis-à-vis mechanics' liens or support Captiva's invitation that we disregard the first spade rule. Captiva's first Point I theory fails.

Alternatively, Captiva claims there was a genuine dispute whether work began on Building 4 before Bank recorded its deed of trust. But *the project's* first spade date is what counts. *See **Drilling Service Co. v. Baebler***, 484 S.W.2d 1 (Mo. 1972), in which a lender made its initial loan "after substantial work was begun and at a time when [the lender] was aware of the total project being built." ***Id***. at 9.

> [The lender] agrees that the project—the improvement—was a unitary one and known to be such by [the lender], but seeks to divide the improvement into *phases* for the purpose of obtaining a priority based on a *phase* of the improvement and to ignore the unitary aspect of the improvement. The law does not allow the rights of mechanics lien claimants to be so restricted.

6

*Id*. at 11.

The same can be said here. Bank knew Majestic Pointe was a multi-building project in progress and "the purpose of the construction loan," to quote Captiva's brief, "had been to finance the construction of Building 4 and complete unfinished units in Building 5." Captiva, Bank's successor-in-interest, cannot "divide the improvement into phases for the purpose of obtaining a priority based on a phase of the improvement and to ignore the unitary aspect of the improvement. The law does not allow the rights of mechanics lien claimants to be so restricted." *Id*. Captiva's second theory fails. We deny Point I and affirm Respondents' first spade priority.[3]

### Point II – Waiver

Because Point I fails, we need not consider Point II's attack on the judgment's finding of waiver as an independent basis for mechanics' lien priority.

### Point III – 14% Prejudgment Interest

The judgment granted some Respondents 14% prejudgment interest based on § 431.180, under which a court may award a prevailing party reasonable attorney fees and interest of "up to" 18% per annum.

Given the bench trial record, we decline to consider Captiva's complaint about the 14% interest rate. As one attorney put it after the close of evidence that day:

> I think, Judge, that we're down to essentially two issues that you're going to have to decide that [the parties] can't get agreement on. One issue is whether the lien claimants are entitled to 18

---

[3] A federal judge handling title insurance litigation involving Majestic Pointe recently agreed that "[u]nder Missouri law, the mechanics' liens in this case 'relate back' to the commencement of construction ...." *Fid. Nat. Title Ins. Co. v. Captiva Lake Investments, LLC*, 941 F. Supp. 2d 1121, 1127 (E.D. Mo. 2013).

> percent interest as opposed to nine percent interest on their liens –
> or at least two of the lien claimants –
>
> ...
>
> They're seeking 18 percent interest as opposed to nine. That issue
> isn't agreed, and I don't expect it will be agreed, so you're going to
> have to make a decision as to whether they get 18 percent or
> whether they get nine.
>
> The other issue is attorney's fees on the lien claim ....
>
> ...
>
> Questec, Missouri Builders and House of Carpet have asked the
> Court to award them attorney's fees on their lien claim as opposed
> to the contract claim that they have against [the general contractor].
> Captiva hasn't agreed to do that.... Captiva hasn't agreed to pay
> attorney's fees, and [the lien claimants] believe attorney's fees are
> appropriate, so that's the other issue I think that you need to
> resolve.

The court said it would "be glad to hear argument on that," disclosing a prior experience with § 431.180 and that "I decided in that matter that I would only allow the statutory interest rate of nine percent" because "I thought that 18 percent was unreasonably high," but

> If the number is different than nine percent and it's not 18 percent,
> if it's something between nine percent and 18 percent, I don't want
> you to be out of pocket. I don't want any of you all to be out of
> pocket on this. So if it is a different number, I'm amenable to
> hearing ... and ruling in your favor on that.

On and off-record discussions followed among parties, attorneys, and the court. It developed that awarding 14% prejudgment interest might cover most attorney fees sought by Respondents without a need for separate fee awards. After one Respondent said it "would be happy with the 14 percent" and opined that "14 percent with no attorney's fees" was equitable, the court sought Captiva's position and was told:

8

[CAPTIVA'S COUNSEL]: Judge, if that would be the ruling of the Court, 14 percent and no attorney's fees, I think I could be fine with that. I'd rather see nine percent interest, but (indiscernible\*\*11:05:00) and I don't have a big problem with the 14 percent if the attorney's fees aren't going to be awarded.

Thus, the court rendered judgment accordingly, despite two Respondents' objections that this would not make them whole. In so doing, the court reasonably relied and acted upon Captiva's indication that it could live with 14% interest "if attorney's fees aren't going to be awarded." We will not now hear Captiva complain otherwise. Point denied.

## Missouri Builders' Cross-Appeal

Missouri Builders raises two points regarding § 431.180, acknowledging that we review both for abuse of discretion. This means we will reverse only if the challenged ruling is so arbitrary, unreasonable, and clearly illogical "as to shock the sense of justice and indicate a lack of careful consideration." *Greasel Conversions, Inc. v. Massa*, 399 S.W.3d 456, 458 (Mo.App. 2013).

### Point I – 9% Post-judgment Interest

Missouri Builders complains that its judgment, which included prejudgment interest at 14% per annum, bears only 9% post-judgment interest. This differential, especially as explained by reference to the trial colloquy above, does not belie careful consideration or shock our sense of justice. We find support in *Fru-Con/Fluor Daniel Joint Venture v. Corrigan Bros., Inc.*, 154 S.W.3d 330 (Mo.App. 2004), a § 431.180 case where the judgment provided 18% prejudgment interest, but only 9% post-judgment interest. In rejecting the creditor's complaint, the Eastern

9

District found "that the trial court was well within its discretion to set the interest rate in such fashion." *Id*. at 339. Point denied.

### *Point II – Attorney Fees*

During the § 431.180 colloquy at trial, Missouri Builders told the court that 14% prejudgment interest would not cover all of its attorney fees. It asked for more fees and offered supporting evidence, but the court declined to award it more money. Missouri Builders claims this was an abuse of discretion. We disagree.

The trial court was an expert on attorney fees. *Tate v. AutoZoners, L.L.C.*, 363 S.W.3d 179, 182 (Mo.App. 2012). Awarding reasonable attorney fees to the various Respondents involved a balancing of factors which the trial judge, who had handled the case for years, was in the best position to weigh. The abuse of discretion standard gives us little room to second guess, even if we were so inclined, which we are not. The trial court might have been more generous to Missouri Builders, but we cannot condemn its considered decision as abuse of discretion. Point denied.

### Conclusion

We affirm the judgment. Motions taken with the case and not previously ruled are denied.

DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, P.J. – CONCURS

WILLIAM W. FRANCIS, JR., C.J. – CONCURS